## Citizens Trust & Guaranty Company v. Farmers Bank of Estill County.

(Decided October 15, 1915.)

### Appeal from Lee Circuit Court.

1. Contracts—Loan to a Corporation, to be Repaid Out of Moneys Received for it by a Second Corporation—Latter Not Primarily Liable for Loan, but Only for Moneys Received by it for the Borrowing Corporation.—Where $5,000.00 was loaned by a bank to a corporation, with the agreement by the borrower and another corporation that it would be repaid by or for the borrower with moneys to be furnished by the other corporation, received from the United States Government on estimates issued by the latter from time to time for work on a dam in the Kentucky river, for the construction of which such corporation was responsible, but the borrowing corporation had contracted with it to perform; Held: That the undertaking of the former did not make it primarily liable to the bank for the amount loaned the borrowing corporation, but only made it liable for such sums, equalling the amount of the loan to the latter, as it might receive from the Government for work on the dam; and where, as shown in this

case, such corporation delivered to the bank, of the money received for work performed on the dam by the borrowing corporation, various sums, not only equalling but exceeding in the aggregate the debt of the bank, a judgment in favor of the latter against such corporation for its debt was unauthorized. In such state of case the bank, instead of delaying until the borrowing corporation made default in the payment of its debt, should, from the time of receiving from the other corporation the first installment of money from the Government, have applied same and each succeeding installment to the payment of its debt until fully discharged. Having failed to take this course it cannot make the latter corporation liable for the debt.

2. Contracts—Made by Telephone—Confirmed by Telegram and Letter—Effect of.—Where a contract was made between a party in this State and another in West Virginia, the terms of which were admittedly communicated by telephone, to be confirmed by telegram and letter from the non-resident, which telegram and letter, both reciting the contract as claimed to be understood by the non-resident, were punctually forwarded by the latter and in due course received by the resident contracting party without objection and acted upon, it will be presumed, in the absence of an allegation and showing of fraud or mistake in their contents, that the telegram and letter correctly set forth the terms of the contract as made by the parties. In a litigation resulting between the parties as to the terms of the contract, the relation of the telegram and letter to the case must be the same as would be sustained by a paper, written and signed by the parties, to evidence an oral agreement previously made, and which, in the absence of a claim of fraud or mistake in its execution, must be accepted as containing the whole agreement or contract made by the parties.

3. Trial—Peremptory Instruction—When Refusal of Reversible Error. —As in this case the evidence wholly failed to show any right in the appellee to recover of the appellant the debt, or any part thereof, sued for, the refusal of the circuit court to grant the peremptory instruction for a non-suit, asked by the latter, was error.

BURNAM & BURNAM and G. W. GOURLEY for appellant.

HAZELRIGG & HAZELRIGG and SUTTON & HURST for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment entered upon a verdict for $5,000.00, with interest from October 22, 1912, recovered by the appellee, Farmers Bank of Estill County, against the appellant, Citizens Trust & Guaranty Company, in the Lee Circuit Court.

The action in which the judgment was rendered grew out of the following state of facts: One W. S. Garrettson,

who had entered into a contract with the United States
Government to construct lock No. 13 on the Kentucky
River, executed a bond to the government for the faith-
ful performance of the contract, upon which the appel-
lant, Citizens Trust & Guaranty Company, a corpora-
tion having its chief office at Parkersburg, West Virginia,
became his surety. After undertaking the work required
of him by his contract, Garrettson failed to comply with
its terms and abandoned the work on lock No. 13. Being
liable upon Garrettson's bond, it devolved upon appel-
lant to complete the work of construction or pay to the
government the liability incurred by it on the bond.
Under a contract with the government similar in terms
to that of Garrettson it undertook the former course. It
thereupon sublet this contract to Gahren, Dodge &
Maltby, a corporation of the State of New York, to com-
plete the work of construction which had previously been
undertaken and abandoned by Garrettson; the Gahren,
Dodge & Maltby Company being at that time engaged,
under a contract with the government, in the construc-
tion of a lock and dam in the Kentucky River, known as
No. 14, at or near Heidelberg, Kentucky.

The contract between appellant and Gahren, Dodge &
Maltby Co., is contained in two writings, dated, respec-
tively, September 17, 1912, and October 8, 1912, the first
being as follows:

"THIS AGREEMENT made this 17th day of Sep-
tember, 1912, by and between CITIZENS TRUST &
GUARANTY COMPANY OF WEST VIRGINIA, a cor-
poration, of the one part, and GAHREN, DODGE &
MALTBY, a corporation, of the State of New York, of
the other part, WITNESSETH: That Gahren, Dodge &
Maltby agree to take over and complete the W. F. Gar-
rettson contract at Dam No. 13, Kentucky River, Ken-
tucky, in all respects acceptable to the Government of
the United States, and to expedite the work and carry
it on to the best possible advantage, upon the following
terms and conditions:

"Gahren, Dodge & Maltby will at once put a plant
worth $5,000 upon the site, and will put such an organi-
zation and force of men there as will insure the prompt
and speedy prosecution of the work, night and day if
necessary. They will pay the unpaid pay rolls which
will be due from the 20th to the 25th of September, and
will charge as their compensation ten per cent. (10%) of

the estimates now due and unpaid, and hereafter to become due. This ten per cent. (10%) to be paid as and when these estimates are collected. The certified pay rolls and bills for supplies and materials necessary to carry on the work will be paid out of each estimate as it becomes due, and Gahren, Dodge & Maltby agree and guarantee that they will not remove any of their plant from the site of the work without the consent of Citizens Trust & Guaranty Company of West Virginia. Citizens Trust & Guaranty Company of West Virginia agrees to sublet the work to Gahren, Dodge & Maltby, upon the foregoing terms and conditions, and it is further understood that if the total cost of completion by Gahren, Dodge & Maltby be less than $55,000, then one-half of the difference between that cost and $55,000 shall be paid to Gahren, Dodge & Maltby, in addition to the ten per cent. heretofore mentioned.

"This agreement is based upon the approval of the Chief of Engineers of the War Department of the United States Government, and also upon the annulment of the contract of Garrettson, and the assumption of the same by Citizens Trust & Guaranty Company of West Virginia, as surety for W. F. Garrettson. It is understood and agreed by the parties hereto, that Gahren, Dodge & Maltby shall take care of, and pay the pay roll on this work until such time as the estimates received from the government exceed the pay rolls paid.

"IN WITNESS WHEREOF Citizens Trust & Guaranty Company of West Virginia has caused this instrument to be signed in its behalf by R. J. A. Boreman, its First Vice President, and its corporate seal to be affixed and attested, by J. H. Knapp, its Secretary, this 17th day of September, 1912, and Gahren, Dodge & Maltby have caused its corporate name to be hereunto signed by J. W. Butler, its Vice President, this 17th day of September, 1912. Executed in quadruplicate.

"CITIZENS TRUST & GUARANTY COMPANY OF WEST VIRGINIA,
"(Signed)    By R. J. A. Boreman,
"First Vice President.
"Attest: J. H. Knapp, Secretary.
"GAHREN, DODGE & MALTBY,
"(Signed    By J. W. Butler, Vice President."

The second writing, of October 8, 1912, is as follows: "A-19574.

"THIS AGREEMENT, made this 8th day of October, 1912, by and between Citizens Trust & Guaranty Company of West Virginia, a corporation, of the first part, and Gahren, Dodge & Maltby, a corporation of the State of New York, of the second part, Witnesseth: That the agreement heretofore entered into by and between the parties hereto, dated the 17th day of September, 1912, for the completion of the W. F. Garrettson contract at Dam No. 13, Kentucky River, Kentucky, is intended to and does embrace and include the work and materials embraced and included in a contract dated the 7th day of October, 1912, entered into between Citizens Trust & Guaranty Company of West Virginia as Contractor and Major L. H. Rand, Corps of Engineers, U. S. A., contracting officer in behalf of United States Government, a copy of which contract and the specifications, therein referred to as amended, is attached hereto.

"This supplemental agreement with the copy of the contract and specifications, above mentioned, to be attached to the agreement between the parties hereto, dated September 17, 1912, for the purpose of more clearly defining and explaining the various things intended to be included in and covered by the agreement of September 17, 1912.

"In Witness Whereof, the parties have caused their corporate names to be signed hereto and their corporate seals to be affixed and attested by their proper officers thereunto duly authorized this 8th day of October, 1912. This supplemental agreement is executed in duplicate, one copy to be retained by each party.

"Citizens Trust & Guaranty Company of West Va.
"By G. W. PETERKIN, President.
"Attest: J. H. KNAPP, Secretary.
"Gahren, Dodge & Maltby,
"By J. W. BUTLER, Vice President."

At the time Gahren, Dodge & Maltby undertook the work there was an unsettled pay roll due the men who had been employed by Garrettson on the work. This pay-roll was for the month of August and until about the 17th of September. Gahren, Dodge & Maltby, under their contract with appellant, retained in their employ the men who had worked for Garrettson, and to whom the money due on this pay roll was going. It will be observed

from the foregoing writings that Gahren, Dodge & Maltby agreed that they would furnish not only the cash necessary for paying off Garrettson's unpaid pay roll for August and September, 1912, but also all future pay rolls during the progress of the work of construction; and, in addition, that they would furnish the necessary labor and material and perform the work of completing the construction of the lock and dam. For the repayment of the sums advanced by Gahren, Dodge & Maltby to discharge the Garrettson and future pay rolls, as well as the cost of material, the above writings provide that appellant should turn over to them all amounts received from the government on the Garrettson estimates for August and September, 1912, and all subsequent estimates, and, in addition, that they should receive ten per cent. of the amount of each of these estimates as a bonus; and, further, that if the actual cost to Gahren, Dodge & Maltby for the material and work required should be less than the government paid, they would make that much more profit over and above the ten per cent. they would receive as stated; that is, if the total cost was less than $55,000.00, then one-half of the difference between such total cost and $55,000.00 would be paid to Gahren, Dodge & Maltby as a bonus.

After beginning and continuing the work of construction required of them by the contract evidenced by the two writings referred to, from October 8th, until about December 31, 1912, Gahren, Dodge & Maltby violated the contract by refusing to proceed further with the work, and removed from the place of work their plant and equipment, which compelled appellant to assume and complete the work of construction. By reason of Gahren, Dodge & Maltby's abandoning their contract and repudiating their obligations, no settlement was ever had with them by appellant.

On the 22nd day of October, 1912, and within two weeks after Gahren, Dodge & Maltby, under their contract with appellant, began work on lock No. 13, the company applied through its vice president, Butler, to James A. Wallace, cashier of the appellee, Farmers Bank of Estill County, for a loan of $5,000.00 to pay the Garrettson pay roll for August and a part of September, 1912. Wallace refused to make the loan to Gahren, Dodge & Maltby, but upon being told by Butler that he was acting for appellant, Wallace claimed to have told

him appellant was considered good and if it would say let him have the money he would make the loan; and, after a conversation over the long distance telephone between Butler and Wallace on the one part and Knapp, appellant's secretary and treasurer, on the other, Butler was furnished the $5,000.00 by Wallace. The proceeds of the loan were not, however, placed to the credit of Gahren, Dodge & Maltby on the books of the bank until after Wallace had received a telegram and letter from appellant, transmitted and mailed October 22, 1912. The loan not having been repaid by Gahren, Dodge & Maltby, or by appellant, suit was brought against them for the amount thereof by the appellee bank, April 24, 1913. The petition, after setting out the corporate status of the appellant and Gahren, Dodge & Maltby, contains these averments:

"The plaintiff says that on the 22nd day of October, 1912, at the special instance and request of both of the defendants, the plaintiff loaned to them the sum of FIVE THOUSAND DOLLARS ($5,000), which amount they each and both jointly and severally agreed to pay to plaintiff one day after date with six per cent. interest from date until paid, and plaintiff says that said indebtedness is just and due, and that no part thereof has ever been paid, and that no interest thereon has ever been paid, although same has frequently been demanded."

By the prayer of the petition judgment was asked against each of the defendants for $5,000.00, with six per cent. interest from October 22, 1912, until paid, and for the plaintiff's costs. Although appellee claims to have taken a note for the amount of the loan, it will be observed that the petition does not declare upon the note. The appellant filed its separate answer, specifically denying each of the above allegations of the petition and praying that the petition as to it be dismissed, and for its costs. The result of the trial has already been stated.

The single question presented for decision by the record before us is: was the $5,000.00 obtained of appellee by J. W. Butler for Gahren, Dodge & Maltby, a loan for which appellant became liable? It is not claimed by appellee that appellant is liable to it as surety for Gahren, Dodge & Maltby, but that its liability for the debt sued on is that of a joint obligor, the other obligor being Gahren, Dodge & Maltby. If the evidence found in the record fails to sustain this contention of the appellee, the

contention of appellant that its motion for a peremptory instruction should have been sustained, must prevail.

In order to correctly determine the matter at issue it will be necessary to consider what was said and done at the time of the transaction in question, and what communication passed by the telegram and letter. The testimony of appellee's cashier, Wallace, as to what then occurred is as follows:

"Mr. Butler came in to get this loan to pay up the Garrettson pay roll, and I would not let him have the money, and he told me he was acting for the Citizens Trust & Guaranty Company of West Virginia, and I told him they were considered good, and if they would say let him have it, I would let him have the money, so he got them over the phone and talked to them at some length, and then he (Butler) told them to repeat the conversation to me. I took the phone and I asked him if that was Mr. Knapp, and he said it was, and I asked Mr. Butler if that was his voice, and he said it was, so I was not acquainted with this gentleman, but Butler said that was his voice, so I told Mr. Knapp that Mr. Butler asked the loan for them, to pay off the Garrettson pay roll, and he told me to let him have the money. I asked him to confirm that by letter or wire, and he did both. Mr. Butler signed up the papers at that time, and after I got the letter and telegram I placed it to their (Gahren, Dodge & Maltby's) credit. (Q. And by whom, and on what account, was that money drawn out of your bank?) That was to pay laborers and things of that kind, that was supposed to be the Garrettson pay roll."

Butler, who was introduced in behalf of appellee, testified as follows:

"Mr. Wallace said he would loan it to the Trust Company, but not to us. I said we must have the money right away; if we don't get it there will be a riot, and he suggested calling up the Citizens Trust & Guaranty Company, and Mr. Knapp answered the phone, and I asked him what we were going to do about paying off the men. I said Mr. Wallace has agreed to loan $5,000.00 to pay them off. Mr. Knapp said 'get it for yourself.' I said 'they won't loan it to us, they will loan it to you,' and he said 'all right, get it.' I said 'is it all right for me to sign a paper?' He said 'yes.' I said 'you repeat that to Mr. Wallace,' so I got off the phone and let Mr. Wallace get on."

Although Wallace's testimony is in most respects corroborated by that of Butler, it will be observed that neither of them said Knapp gave any assurance that appellant would repay the loan or guarantee its payment. Wallace's testimony goes no farther than to say that when he informed Knapp, Butler asked a loan to pay the Garrettson pay roll, Knapp said let him have it, following which he asked Knapp to confirm that by telegram or letter, which he promised to do and did, both by telegram and letter. The substance of Butler's testimony is that when he told Knapp Wallace would not let Gahren, Dodge & Maltby have the desired loan, but would make it to appellant, Knapp said, "All right, get it," and that when he asked Knapp if it would be right for him to sign a paper, the latter said, "Yes." Wallace does not claim to have heard this statement made by Knapp to Butler, or to have been told by Knapp that it would be right for Butler to sign a paper. It will also be observed that Butler does not claim to have asked Knapp if it would be right for him to sign appellant's or Knapp's name to a paper; the inquiry on this point was limited to whether it would be right for Butler to sign *a paper,* without indicating the character of the paper.

J. H. Knapp, appellant's secretary and treasurer, being introduced in its behalf, in substance, gave the following testimony:

"Mr. Butler called me over the long distance telephone and said that he was in Irvine, Ky., that he had arranged with the Farmers Bank there to borrow $5,000.00 of money to pay the pay rolls and other charges on the 13 work, but that the bank would not let him have the money unless he would agree to send to the bank the money from the government when we got it, and I told him that we would be willing to do that. * * * I talked to Mr. Wallace over the telephone and reiterated to him the same statement, that we would send to the bank— Butler had told us to send to the bank, and we would do it—this government money whenever it was received and after it was received. Mr. Wallace did not ask me over the telephone to guarantee the payment of the note, or anything of that sort." Knapp claimed he had never heard of Wallace's bank prior to that time, and further said: "Mr. Wallace did not say anything to me about money being borrowed for the Guaranty Company, and

I said nothing to him about it, and I did not ask him to let Gahren, Dodge & Maltby have the money."

Knapp also testified that it was agreed in the conversation between him and Wallace what he said with respect to the loan should be confirmed by a telegram or letter, both of which were on that day, October 22, 1912, sent to Wallace, and it is admitted by Wallace that the telegram was received by him that day and the letter on October 24th, two days later.   It is patent, therefore, that whatever assurance was made or obligation assumed by appellant in the conversation in question was contained in the telegram and letter; and, further patent, that the subsequent action taken by Wallace in making the loan was based upon the contents of the telegram and letter, for he emphatically states, and more than once repeats the statement, that the $5,000.00 loaned was not placed to the credit of Gahren, Dodge & Maltby until October 24th, and after the telegram and letter had both been received.   If the assurance given or undertaking assumed by appellant as expressed in the telegram and letter had differed in any material respect from the understanding between the parties arrived at over the telephone, the conclusion is inevitable that Wallace, as the representative of the appellee bank and a good business man, would have held up the loan and had a further communication with Knapp.

It is the contention of appellant that the only agreement made by Knapp with Wallace and Butler over the telephone was that appellant would turn over or pay to the appellee bank the estimates on dam 13 when received from the government, or the money received upon such estimates from the government, to reimburse it for funds it advanced Gahren, Dodge & Maltby for settlement of pay rolls on dam 13, and the telegram and letter referred to fully sustain this contention.   The telegram is in the following words and figures:

"Parkersburg, W. Va., Oct. 22, 1912.
"Farmers Bank, Irvine, Ky.

"Will pay to you estimates on dam thirteen when received from government for reimbursing funds advanced Gahren, Dodge & Maltby for pay roll on dam thirteen.

"Citizens Trust & Guaranty Co."

The letter is as follows:

## "CITIZENS TRUST AND GUARANTY COMPANY

### Of West Virginia.

"Parkersburg, W. Va., Oct. 22, 1912.

"Farmers Bank,

"Irvine, Ky.

"Gentlemen:

"Referring to work on dam No. 13, Kentucky River, which is being completed by this company under contract with the United States Government, the said contract being made by reason of this company's liability as surety upon the bond of W. F. Garrettson, former contractor, and which work we have sub-contracted to Gahren, Dodge & Maltby: Our understanding is with the latter concern that they are to advance certain funds to meet the pay roll, which sums are to be covered by estimates received by us from the government. We are requested by telephone today to wire you, agreeing to turn these estimates over to you till reimbursed for sums advanced Gahren, Dodge & Maltby, for purposes of meeting these pay rolls, and we assume, therefore, that they have made arrangements with you for advancing them the necessary cash.

"Pursuant to this telephonic request, we have just wired you as follows:

" 'Will pay to you estimates on dam thirteen, when received from government for reimbursing funds advanced Gahren, Dodge & Maltby, for pay roll on dam thirteen.

" 'Citizens Trust & Guaranty Co. of W. Va.'

"Which wire we now confirm.

"Yours truly,

"W. G. PETERKIN, President."

The above telegram and letter were introduced in evidence by appellee and read and identified by Wallace in giving his testimony. They, therefore, constitute a part of appellee's evidence. They were without objection accepted by appellee as confirmatory of the agreement made with appellant through Knapp over the telephone, and were retained by it as evidence of the agreement of the parties. This being true, their relation to this case is the same as would be sustained by a paper written and

signed by the parties to evidence an oral agreement previously made, and which, in the absence of a claim of fraud or mistake in its execution, must be accepted as containing the whole agreement or contract made by the parties. It is a well known rule of law that where the parties to a contract have deliberately put their engagements into writing, so expressed as to import a legal obligation, without any uncertainty as to the object or extent of their engagement, all previous negotiations and agreements with reference to the subject matter are presumed to have been merged in the writing, and with respect to such contract it is a well known rule of law that in the absence of fraud or mistake, parol or extrinsic evidence is not admissible to vary, add to, modify or contradict the terms or provisions of the contract as put in writing. But, as said in 17 Cyc., 599:

"It is of course necessary to the application of the rule just stated that there shall be a complete written contract between the parties, the writing being of such a nature as to show that it was intended to evidence their agreement with reference to the subject matter, and having the element of mutuality necessary to constitute a complete contract; but it is not necessary that the contract shall be in any particular form or that it shall be all contained in one paper, or signed by both parties; and a writing evidencing the whole of an agreement between the parties which has been delivered, accepted, and under which business has been transacted, cannot be varied by parol, even though it is not signed. Nor does the fact that a contract originally rested in parol and was reduced to writing only after being partly performed preclude the application to the writing of the rule excluding parol evidence to vary or contradict the writing, for the parol agreement is merged in the written one." Nat'l Mutual Benefit Assn. v. Heckman, 86 Ky., 254; V'ansant v. Runyon, 19 R., 1981; Gaither v. Dougherty, 18 R., 709; Farmer v. Gregory, 78 Ky., 475; Voss v. Shebeck, 25 R., 481.

Neither the telegram nor letter contains any intimation of an agreement or undertaking on the part of appellant to assume the payment to appellee of the $5,000.00 loaned by it to Gahren, Dodge & Maltby; nor does either contain any statement or admission of an understanding on the part of appellant that the loan of the $5,000.00 had been made to it. On the contrary, the contents of both

clearly indicate a mere understanding on the part of appellant that the loan of the $5,000.00 was made by appellee to Gahren, Dodge & Maltby, and that appellant was only asked to turn over to appellee, in behalf of Gahren, Dodge & Maltby, the estimates furnished by the government from time to time upon the work done· on dam 13, or the money received on such estimates, that they might be applied to the payment of the loan of $5,000.00 made Gahren, Dodge & Maltby by appellee, until discharged.

It will· further be observed that neither the telegram nor letter manifests any agreement or understanding on the part of appellant or Knapp that appellant was to execute or become a party to a note or other writing, to be taken by appellee for the loan; nor does either contain any authority to Butler to execute such a paper or sign appellant's name thereto. In this connection it should be remarked that the understanding of appellant, expressed in the telegram and letter, which Knapp testified is the only agreement made by him with Wallace and Butler over the telephone, is in accordance with the contract it made with Gahren, Dodge & Maltby, a provision of which required it to turn over to Gahren, Dodge & Maltby, to reimburse them for moneys they were to advance on the pay rolls and for supplies, not only the government estimates, or moneys received thereon, in arrears on the work done on dam 13 by Garrettson, but also such estimates or moneys as appellant might receive for the work of Gahren, Dodge & Maltby; and, as we shall presently see, there is no contrariety of evidence as to the fact that appellant has fully complied with the above provision of its contract with Gahren, Dodge & Maltby.

The note Wallace claims to have taken from Butler, October 22, 1912, is as follows:

"5,000.00                                     Irvine, Ky., Oct. ·22, 1912.

"One day from date we promise to pay to the order of FARMERS BANK OF ESTILL COUNTY, Irvine, Ky.

_____Five Thousand_____ Dollars, Negotiable and payable at FARMERS BANK OF ESTILL COUNTY, Irvine, Ky., value received, with interest at the rate of 8% per centum per annum after maturity until paid. Endorsers waived demand, protest, notice of protest, and all legal diligence to enforce collection. As per agreement of this date hereto attached this

money advanced is for August and part of September pay roll of W. F. Garrettson at Lock 13, Ky., and other small bills, as per telephone with Mr. Knapp.

"Citizens Trust & Guaranty Co.
of Parkersburg, West. Va.

"Gahren, Dodge & Maltby, Agent.
"J. W. Butler, V. P."

For some reason not explained by Wallace or Butler, the former also caused the latter to execute to him the following additional writing:

"Irvine, Ky., Oct. 22, 1912.

"This is to certify that I have borrowed from the Farmers Bank of Estill Co. ($5,000.00) Five Thousand Dollars, for the Citizens Trust and Guaranty Company, of Parkersburg, West Virginia, to pay W. F. Garrettson's pay roll for August and part September, and other small bills as per conversation over telephone with Trust Co., and this day confirmed by wire to said bank.

"Citizens Trust & Guaranty Co.
"Gahren, Dodge & Maltby, Agents.
"By J. W. Butler, V. P."

If the execution of the note was unauthorized by appellant, the execution of the above writing by Butler was also unauthorized. As neither Wallace nor Butler claims that their conversation with Knapp over the telephone, or any memorandum thereof, was at the time or subsequently put in writing, the statement in the note that it was executed "as per agreement of this day, here to attached," must either refer to the independent writing given by Butler or the telegram that day received by Wallace from Knapp. In any event, the agreement expressed by the telegram and in the letter from appellant of the same date, must be regarded as the one made between Knapp, Wallace and Butler over the telephone, for both were sent at Wallace's request to confirm what had been agreed on by telephone, and were without objection received and accepted by both Wallace and Butler as confirmatory of the telephone agreement.

As to the signing of appellant's name by Butler to the note and writing, Knapp testifies that Butler in so doing acted without authority. Butler alone claims that it was authorized by Knapp, but as Knapp's testimony as to the

agreement made by telephone is corroborated, and that of Butler as well as Wallace contradicted, by the contents of the telegram and letter, we are constrained to accept the denial of Knapp that he had authorized the signing of appellant's name to the note. Moreover, it appears from other evidence in the record, which is uncontradicted, that Knapp himself was without authority to sign appellant's name to a note; such authority, under its corporate powers and by-laws, being vested in its president and vice president and not in its secretary or treasurer, both of which positions Knapp holds. As Knapp was without authority to sign appellant's name, he was without power to confer such authority upon Butler; so, in no event, can it be said that the note in question imposes upon appellant any obligation to pay it. Doubtless, appellee's recognition of the want of authority in Butler to sign appellant's name to the note, led to its suing the latter as "for money had and received," instead of upon the note.

It is patent, therefore, that appellee's own evidence, furnished by the telegram from Knapp, appellant's secretary and treasurer, and the letter from Peterkin, its president, which appellee's cashier and Butler accepted as confirmatory of and manifesting the agreement made by means of the conversation between them and Knapp over the telephone, conclusively shows that the only obligation or undertaking assumed by appellant was that it would turn over and pay to appellee all estimates furnished by the United States Government, or money it received thereon for work on Dam 13, to reimburse appellee for funds advanced Gahren, Dodge & Maltby for pay rolls on dam 13. This understanding applied, of course, to the estimates on the pay rolls of Garrettson then in arrears, and all future estimates or moneys on the work of Gahren, Dodge & Maltby. After accepting without objection the telegram and letter intended to confirm the contract made with appellant by telephone, and thus manifesting its approval of the terms thereof as set forth in both, appellee is bound thereby and will not be permitted to contradict or modify its meaning. Appellee's approval of the contents of the telegram and letter is free of doubt, because shown by its refusal to deposit to the credit of Gahren, Dodge & Maltby the amount loaned, before the letter of appellant's president was received, which did not reach its hands until October 24, 1912.

Appellant's compliance with the agreement made with appellee by telephone and expressed in its telegram and letter to it, is equally free from doubt. There is no contrariety of evidence as to tne fact that it paid to appellee for Gahren, Dodge & Maltby every estimate and all moneys it received from the government for work on dam 13. Appellant did not pay appellee the money on estimates for the work of August and part of September, 1912, done by Garrettson on dam 13, for those estimates and the money thereon have never been furnished or paid by the government and are yet withheld for future adjustment. But, independent of the Garrettson estimates, appellant paid to appellee for Gahren, Dodge & Maltby, from October 22, 1912, down to the time Gahren, Dodge & Maltby, threw up their contract and abandoned work on dam 13, on estimates from the government, about $11,000.00; and as the sums thus paid were placed to the credit of Gahren, Dodge & Maltby in the appellee bank, and under the latter's agreement with appellant and Gahren, Dodge & Maltby were all liable for the debt of $5,000.00 due it from Gahren, Dodge & Maltby, it had the legal right to appropriate therefrom an amount sufficient to pay the debt, or to compel its payment from these deposits by that company, and if it did not do so, it was not the fault of appellant.

It is not material to this controversy that appellant's liability as surety on the original contract made by Garrettson with the United States Government would, in the absence of the sub-contract it made with Gahren, Dodge & Maltby, have compelled it to liquidate the pay rolls, liability for which was assumed by the latter. It had the right to protect itself against such threatened loss by making the contract with Gahren, Dodge & Maltby, without subjecting itself to liability to such debts of that company as it made with appellee. Not being primarily liable to appellee for the loan it made Gahren, Dodge & Maltby, its mere willingness, with the consent of Gahren, Dodge & Maltby, to aid the former in securing its debt against the latter by paying to it the moneys received on government estimates, which its contract with Gahren, Dodge & Maltby had required it to pay them made appellant liable to appellee for nothing more than the amount of the estimates received by it from the government, and this liability it has fully discharged.

On the other hand, if any loss has been sustained by appellee, it has resulted from its own negligence in failing to appropriate to the payment of the debt sued on, enough of the moneys paid it for Gahren, Dodge & Maltby by appellant, to accomplish that end.

As there is no evidence in the record to sustain the right of recovery attempted to be enforced by appellee, the peremptory instruction directing a verdict for the appellant, as asked by the latter, should have been granted by the trial court. This conclusion renders consideration of the instructions given by the court unnecessary. For the reasons indicated the judgment is reversed and cause remanded, with directions to the circuit court to grant appellant a new trial, and for further proceedings consistent with the opinion.