## Loveland, et al. v. Hays.

### (Decided March 24, 1925.)

## Appeal from Lincoln Circuit Court.

1. Contracts—Prior Conversations Merge into Written Contract.—
   Prior conversations merge into written contract.
2. Contracts—Person Signing Contract Without Reading it, Having
   it Read to Him, or Being Told of its Contents, is Estopped to
   Claim Fraud.—Ordinarily, a person who signs contract without
   reading it, or having it read to him, or being told of its contents,
   is estopped to claim that his signature was obtained by fraud.
3. Sales—Cancellation of Notes as Being Procured by Fraud Held
   Not Justified.—Where defendant signed contract for phonograph
   agency, order for phonographs and records, and notes for price,
   and retained duplicate copies of contract and notes without pro-
   test, held that cancellation of notes as being procured by fraud
   in that defendant was led to believe that he was given agency
   to sell on commission was erroneous.

J. N. SAUNDERS for appellants.

GEORGE D. FLORENCE and T. J. HILL, JR., for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Granting appeal and reversing.

The Brennard Manufacturing Company sought a re-
covery on six promissory notes aggregating $422.00, pur-
porting to have been executed by the defendant as the
purchase price of three phonographs.

Defendant Hays admitted the execution of the notes
but pleaded that they were procured through fraud and
asked a cancellation thereof. The evidence was taken by
deposition and heard and tried by the chancellor, the
case being treated as an equitable one. The chancellor
dismissed the petition and plaintiffs appeal.

The proof is that plaintiffs are partners dealing in
phonographs in Iowa City, Iowa; that their salesman
called on appellee on November 18, 1920, and procured
from him a written contract accepting the agency of their
line of goods for three years, and an order purchasing
three machines listed at $225.00, $175.00 and $150.00, re-
spectively, with twelve records at $12.00, making a total
retail price of $562.00, deducting the dealer's discount,
the wholesale price being $442.00.

This amount was divided into five installment notes
of $80.00 each and one for $22.00. The notes were phy-

sically attached to the contract, the contract being executed in duplicate by Hays and all forwarded to the Brennard Manufacturing Company for their acceptance. They were received on the 20th, accepted by the company and duplicate copy of contract and copies of notes returned to Hays, together with a bond for the faithful performance of the contract. This was retained by Hays without objection.

On December 3rd, however, he wrote the company that the records had not arrived with the machines; that the salesman had said the company would guarantee their sales and take them back if not sold during the holidays.

The company answered, explaining the delay in the shipment of the records and that the contract was a sale of the machines; they also wrote and asked him if he would be willing to discount his notes.

It seems that the records had arrived in the meantime and no further reference was made to them; on the 11th Hays wrote them stating his version of the contract and repudiating the written contract and offering to return the machines, which the company declined to permit. Hays kept the machines but sold none of them. Suit was filed at the maturity of the notes.

The company took Hays' deposition as on cross-examination. In it he denied *in toto* the execution of the notes and the contract, though in his answer he admitted their execution. Later he gave his deposition on his own behalf in which in answer to direct questions he explained that he did not sign the notes in their present form; that the salesman represented to him that he was simply taking the agency; that an agent would be sent out later to take up the unused goods and he would receive 40% commission on the goods sold. He did sign a paper, but it was not read to him by the agent, nor did he claim that the agent made any statements as to its contents; he did not sign *this* paper, the gist of his complaint being that it does not contain the agreement he made with the agent.

He introduced as a witness his clerk, a young lady who heard a part of the conversation, and also a customer who was present, both of whom say that the agreement between him and the salesman was that he was simply to take the agency to sell the goods on a commission. The agent for the company has not testified.

It is elementary that prior conversations merge into a written contract and where one signs a contract without reading it or having it read to him or being told of its contents ordinarily he is estopped to urge that his signature thereto was obtained by fraud; but in this case Hays' attitude is still worse. The written contract and notes were not to be binding until accepted by the company. The company accepted them on the 20th of November and sent him duplicate copies by registered mail. He then had an opportunity to inspect them. He received and retained them without protest until some time afterward, and when sued upon the notes did not claim that his signature was obtained by fraud, but in most emphatic terms denied the signature, and this, too, in contradiction of his answer which admitted such execution. In a subsequent deposition he again admitted this in a qualified way. Mildly stated, he has not pursued a consistent course.

Considering the entire record, we do not think the evidence sufficient to authorize a cancellation of the written instrument. The learned chancellor was in error in so holding.

Wherefore, an appeal is granted, and case reversed and cause remanded for proceedings consistent with this opinion.