## Turner Elkhorn Coal Company v. Smith, et al.

(Decided February 22, 1927.)

## Appeal from Floyd Circuit Court.

1. Evidence—Oral Testimony is Inadmissible to Contradict or Vary Terms of Written Contract.—When parties have deliberately put contract in writing, all oral testimony, conversations, or declarations at time when it was completed, or afterwards, are inadmissible to contradict or vary terms of written contract.

2. Evidence—Rule Forbidding Oral Evidence Contradicting or Varying Written Instrument is Inapplicable, when Writing is Not Complete, or Evidence is Consistent with Instrument.—Rule forbidding varying or contradicting terms of written contract by oral testimony does not apply, when writing does not appear to be complete contract, or parol evidence is consistent with instrument.

3. Evidence—Oral Discussions Preceding Written Contract are Inadmissible, Unless Writing is Attacked for Fraud or Mistake.—Unless written contract is attacked for fraud or mistake, party cannot show oral discussions preceding time the contract was finally reduced to writing.

4. Evidence—Defendant, to Recover for Breach of Alleged Oral Agreement, Must Allege that it was Omitted from Written Contract of Settlement by Fraud or Mistake.—Where parties to construction contract signed writing, providing that it was a full settlement between the parties, defendant, to recover on breach of alleged oral agreement of plaintiff to pay certain claims against defendant, must allege that such agreement was omitted from contract of settlement by fraud or mistake.

5. Evidence—Proof of Fraud or Mistake in Omitting Part of Contract in Writing Must be Clear and Satisfactory.—In order to sustain allegation that part of contract was omitted from writing by fraud or mistake, proof of fraud or mistake must be clear and satisfactory.

6. Attachment—Execution of Bond by Defendant Discharged Attachment, Making it Improper for Court to Order Attachment Discharged on Dismissing Petition.—Execution of bond by defendant resulted in discharge of attachment taken out by plaintiff, and trial court improperly made order discharging attachment, when petition was dismissed.

JOSEPH D. HARKINS for appellant.

A. J. MAY for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

The Turner Elkhorn Coal Company brought this suit against T. W. Smith, alleging in their petition that

he had theretofore agreed to construct a siding for them by contract and had employed the persons named to work for him under the contract and delivered to them checks in payment of their wages. The bank named in the checks had failed to pay the checks for lack of funds and the workmen were asserting a lien upon their property, and to avoid this the plaintiffs paid the checks to the workmen, amounting to $711.17, and they also paid $117.32 on a judgment against them in favor of another party on checks given by Smith. They prayed judgment for the amounts indicated and took out an attachment. Smith by his answer admitted the making of the contract for the improvements and the issuing of the checks by him, and pleaded that the work he did, under the contract at the contract price, amounted to $27,785.44, on which the plaintiffs had paid him $11,663, leaving unpaid $16,122.44, for which he prayed judgment, less the amount of the checks sued for. He executed bond to perform the judgment of the court and the attachment was discharged thereby. By reply the plaintiffs denied the allegations of the counterclaim and pleaded that on the 19th day of October, 1921, they made a complete settlement with Smith of all the claims and demands which he had against them arising out of the contract. They filed, as part of the reply, the written contract of settlement, which was in these words:

"This memorandum of settlement, made this the 19th day of October, 1921, by and between T. W. Smith, Prestonsburg, Kentucky, and the Turner Elkhorn Coal Co., Drift, Ky., as follows:

"First: The Turner Elkhorn Coal Company are to be reimbursed at the earliest date possible, by Mr. T. W. Smith, for checks given by said Smith for work done on the Turner Elkhorn Coal Company's siding by his laborers (Smith) to them, and was not able to meet said checks, and which checks were paid by the said Turner Elkhorn Coal Co. as follows:

| | |
|---|---|
| Woots Gearheart | $69.40 |
| Woots Gearheart | 36.25 |
| Jere Tackett | 19.50 |
| Jere Tackett | 11.10 |
| Woots Gearheart | 23.03 |
| Jim Stewart | 2.60 |

| | |
|---|---|
| Green Sexton | 94.34 |
| John Burke | 7.16 |
| ———— Bryant | 104.00 |
| Mark Hunter | 28.00 |

and any other not so listed above.

"Second: This settlement under this arrangement for said siding for said company completes a full settlement between the parties, the Turner Elkhorn Coal Co. and T. W. Smith, when said checks are paid by said T. W. Smith.

"Third: Said checks are to be payable and to be redeemed as soon as said Smith has a sufficient fund, or means to take them up.

"TURNER ELKHORN COAL CO.,

By W. R. Reece, Mgr.,

T. W. Smith.

"Witnesses:

JNO. I. CLAYBROOKE,

J. D. TURNER."

Smith began his work in October, 1920, and had ceased work in April, 1921. He had not been at work at all after April, 1921, when this contract was made on October 19, 1921. The defendant filed a rejoinder in which he denied that they made a complete settlement, or any settlement on October 19th. He admitted signing the writing, but alleged that it was not a full settlement and that he signed it upon the express agreement of W. R. Reece, plaintiff's manager, that the plaintiffs would thereafter pay certain persons named sums amounting in the aggregate to $4,466.90, but that the plaintiffs had paid no part of this money; that he signed the paper believing that this money would be paid; that the representations of Reece were false and fraudulent and made for the fraudulent purpose of deceiving him. He prayed judgment for $4,466.90, less the aggregate of the checks sued on. The plaintiff filed a surrejoinder denying the allegations of the rejoinder. The defendant then filed an amended answer, in which he alleged that the amount of his work was $20,132.06, and that he had been paid on it $15,616.93; he prayed judgment for the balance, $4,515.13. The plaintiff moved that he be required to elect on which ground he would rest his counterclaim. He elected to rest it on the amended answer. The amended answer was controverted, proof was heard and

at the conclusion of the evidence the court instructed the jury in substance as follows: (1) They should find for the plaintiffs the amount of the check sued for. (2) If they believed from the evidence that Smith, under his contract, had earned money which he had not been paid, they should find for him on his counterclaim, not exceeding $3,515.05. (3) They should set off the finding for the plaintiffs against the finding, if any, for the defendant, and find a verdict for the balance in favor of the party entitled thereto.

The jury returned a verdict in favor of the defendant for $2,000.00. The plaintiffs appeal.

It will be observed that the court entirely ignored the written contract of October 19, 1921, made five months after the defendant had completed his work. The defendant admits that he signed the writing and the writing expressly provides that it "completes a full settlement between the parties," when certain checks are paid by Smith. The rule is elementary that when the parties have deliberately put their contract in writing all oral testimony of conversations or declarations at the time when it was completed or afterwards are inadmissible to contradict or vary the terms of the written instrument. Noel Company v. Theobald, 217 Ky. 28, and authorities cited. The rule does not apply when the writing does not appear to be a complete contract or the parol evidence is consistent with the instrument. Castleman-Blakemore Co. v. Pickrell & Craig Co., 163 Ky. 750, 174 Ky. 1. But this case does not fall within either of these exceptions. All parol negotiations are conclusively presumed to have been agreed on. Unless the writing is attacked for fraud or mistake a party cannot show oral discussions preceding the time the contract was finally reduced to writing. Conrad v. Smith, 203 Ky. 171, Pickrell & Craig Co. v. Bollinger-Babbage Co., 204 Ky. 314, Sanders v. Wender, 205 Ky. 422; Hatcher-Power Co. v. Bickford, 212 Ky. 163; Provident Life Ins. Co. v. Hancock, 214 Ky. 142.

While the defendant alleged that he signed the writing upon the agreement of W. R. Reece, plaintiffs' manager, that the plaintiffs would thereafter pay the persons named sums amounting in the aggregate to $4,466.90, he did not allege that this was omitted from the contract by fraud or mistake, or state any facts showing this. Without an allegation of fraud or mistake in the writing there

could be no recovery by the defendant on his counter-claim, for the writing superseded the original contract and was a settlement of that contract. If the defendant recovers at all on his counterclaim he must recover under the settlement and not upon the original cause of action unless the contract was procured by fraud, for the written contract was a final settlement and the only thing to be now determined is, what was the settlement? On the return of the case to the circuit court the defendant will be allowed to amend his rejoinder. If the pleading is amended to charge that part of the contract was omitted from the writing by fraud or mistake, and on another trial there is evidence that this was the contract and that it was omitted from the writing by fraud or mistake, the question may be submitted to the jury, and the jury will be told if they find for the defendant on the counterclaim to find for him in the amount which the plaintiff agreed to pay to the persons named less the checks sued on.

A large part of the evidence in the case was devoted to showing how much Smith's work amounted to, as shown by measurements made since October 19, 1921, and how much had been paid him on it. No part of this evidence should have been admitted. The writing signed by Smith shows clearly there had been a settlement and the only question in the case, unless the settlement was procured by fraud, is, what were the terms of this settlement if any part of it was omitted by fraud or mistake from the writing? The defendant introduced three witnesses who had worked for him on the work and proved by them that Reece, the manager, had told them in substance that the plaintiffs would pay their claims. As we understand the evidence this was all before the meeting on October 19, when the written contract was signed, and was entirely incompetent. Any promise that Reece made to pay the debts named after the settlement on October 19 may be proved to corroborate other evidence that part of the contract was omitted from the writing, but nothing that he said before that time is competent; to be competent it must be shown that the promise was made after the settlement. The proof shows that Smith was behind with his men while the work was going on, and Reece naturally had to keep them at work by promising to see them paid.

The rule is well settled that to sustain the allegation that a part of the contract was omitted from the writing

by fraud or mistake the proof of the fraud or mistake must be clear and satisfactory. If the matter is submitted to the jury, the court will so instruct the jury.

If on the return of the case to the circuit court the defendant amends his pleading and alleges facts showing that the contract of October 19 was obtained by fraud and so is not binding on him, then if he shows this by competent proof, he may recover on his original contract any balance due him thereon. His pleading now filed is not sufficient for this purpose, and if a sufficient pleading for this relief is filed and is supported by sufficient evidence, then the question of fraud in procuring the contract may be submitted to the jury and they may be instructed that if they find that the contract of October 19 was procured by fraud then they may find for the defendant on his counterclaim the amount, if any, due him on his original contract for the work.

The execution of the bond discharged the attachment and it was improper for the court to make an order discharging the attachment when the petition was dismissed. The bond protectes the plaintiffs if judgment is finally rendered in their favor in the action.

Judgment reversed and cause remanded for a new trial.