# Farmers' & Traders' Bank of Campton v. Smith.

(Decided May 29, 1928.)

## Appeal from Whitley Circuit Court.

1. Evidence.—Where parties had put their engagements into writ· ing in such terms as to import a legal obligation without any uncertainty as to object or extent of such engagement, the court would conclusively presume that the whole engagement of the parties and the extent and manner of undertaking as to assumption and payment of debts in return for assignment of credits was reduced to writing.

2. Evidence.—Oral testimony of previous conversations between parties prior to their having put their contract into writing is inadmissible to prove terms of contract, where it was deliberately put into writing in such terms as to import a legal obligation, without any uncertainty as to object or extent of engagement.

3. Banks and Banking.—Persons dealing with bank were required to take notice that the bank had no power to engage in the contracting business, and hence that it was without power to make a road contract with the highway' commission.

4. Bills and Notes.—In suit on note, contention that note was paid by application of fund pursuant to oral contract held untenable, where the oral contract, if made, was superseded by a written contract making payments applicable to other debts.

5. Bills and Notes.—In payee's suit on note, where defense was that the note had been paid by makers' thereof other than defendant, evidence held to require peremptory instruction for plaintiff.

S. MONROE NICKELL and TYE & SILER for appellant.

J. C. BIRD, R. L. POPE, H. H. OWENS and J. M. ROBSION for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

The Vermillion Contracting Company and C. C. Smith, on February 20, 1923, executed their note to the Farmers' & Traders' Bank of Campton, Ky., for $5,000, due in 90 days. The bank brought this suit against Smith to recover on the note. He, by his answer, pleaded that about the time the note fell due the Vermillion Contracting Company paid the note by arrangement with the bank, through its cashier, in this way: The Vermillion Contracting Company had a contract for the construction of a state highway in Wolfe county and had performed work thereon until there was a retained per-

centage in the hands of the state highway department amounting to $4,126.93, and, in addition to this, work had been done during the current month, the retain on which was something over $700. The contracting company had an estimate at that time for work done the previous month, amounting to $7,173,68, out of which labor and materialmen's claims were to be paid, amounting to about $6,100. The contract of the contracting company was valuable. It had teams, tools, and equipment of the value of $5,000. The reasonable rental value of the equipment was $50 a month, and an arrangement was made between the bank, through its cashier, James Drake, and the Vermillion Contracting Company, by which the contracting company sold and assigned to the bank and its cashier, for the use and benefit of the bank, all retained percentages and the estimate above referred to, out of which the bank should pay about $6,100 to the laboring men, etc., and use the equipment in the completion of the contract, and it was agreed between the contracting company and the bank, through its cashier, that the retained percentage and voucher, and the earnings from the contract, including the use of the live stock, machinery, and equipment, should be applied to the payment of the $5,000 note sued on, and any money that was left after satisfying this should go one-half to Drake and one-half to the Vermillion Contracting Company.

The allegations of the answer were controverted, proof was heard, and on final hearing there was a verdict and judgment in favor of Smith. The bank appeals.

T. J. Vermillion and G. E. Vermillion, who constitute the active members of the Vermillion Contracting Company, both testified in substance that an agreement was made by parol with James Drake, the cashier of the bank, in substance as set out in the answer. But they both admitted that, after the verbal agreement was made in Wolfe county, T. J. Vermillion and James Drake, pursuant to the agreement, came to Frankfort and there entered into a written contract. By the written contract the Vermillion Contracting Company, the party of the first part, assigned their road contract to James Drake, the party of the second part, he to receive the same prices from the state highway commission as the Vermillion Contracting Company, and to be paid in the same manner. It contained these provisions:

> "Said Drake is to pay the accounts and debts of the Vermillion Contracting Company as shown

upon a list hereto attached, same being identified by the signatures of the parties hereto; it being expressly understood and agreed, however, that all of said accounts and debts grew out of the work herein mentioned, and that no other liabilities of any kind or nature of the Vermillion Contracting Company are assumed by the said Drake.

"The retained percentage due the Vermillion Contracting Company by the state highway commission upon the work they have heretofore done on this work is to be assigned and paid over to said Drake, this having been taken into consideration by the parties hereto in respect to the assumption by the said Drake of the accounts herein mentioned."

After this contract was drawn and signed and approved by the state highway commission, the parties returned to Wolfe county. There the Vermillion Contracting Company indorsed the check for $7,173.68, which had come in the meantime from the highway department, and Drake opened an account in the bank, thus: "James Drake, Road Account." The check was placed to his credit in this account. Vermillion made out the checks which Drake was to pay. He signed the checks "James Drake, Road Account," and they were all paid. The payments he made exhausted this account, leaving a balance overpaid and nothing to go to the bank.

While Vermillion testifies that the oral agreement he made in Wolfe county was with the bank, or rather with Drake for the bank, the fact is whatever arrangement he made in Wolfe county different from the written contract was never carried out. The written contract superseded the oral agreement. If he had any agreement with the bank before he came to Frankfort, he did not carry it out, but he made a contract there with James Drake individually. In 1 Greenleaf on Evidence, sec. 275, the well-settled rule is thus stated:

"When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversation or declarations at the time when

it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected.''

To same effect, see Salyer v. Salyer, 141 Ky. 654, 133 S. W. 556; Robb v. Sherrill-Russell Lumber Co., 194 Ky. 835, 241 S. W. 64; Taylor v. Williams, 199 Ky. 154, 250 S. W. 820; Sales v. Duncan, 201 Ky. 161, 256 S. W. 17.

By the written contract Drake was to pay all of the accounts and debts growing out of the work mentioned, and assumed no other liabilities of any kind of the Vermillion Contracting Company. This did not include the note to the bank and the parties at the time so agreed, for, as both the Vermillions well knew, no part of the check for $7,173 was applied to this note. The retained percentage, due from the state highway commission, was by the written contract assigned to Drake, and not to the bank. The written contract is therefore conclusive that, if there was any verbal agreement in Wolfe county, as stated by Vermillion, it was superseded by the written contract which actually disposed of both the check for $7,173 and the retained percentage in a different way.

In addition to this, the bank was not in the contracting business. It was without power to make a road contract with the highway commission. Drake, as its cashier, had no authority to make such a contract for it. Everybody who dealt with the bank was required to take notice of this. Drake testifies unequivocally that he made the contract for himself, and not for the bank. He was running a store, also a mill, and doing an extensive business. He at once took charge of the road contract, took out insurance as a contractor, and went on with the contract in his own name, all of which Vermillion well knew. After assigning the voucher for $7,173 to James Drake to be paid out on the road claims and assigning to him the retained percentages due from the highway department in consideration of his agreement to complete the road contract, the contracting company cannot maintain that the bank note was paid by this money, for the verbal contract, if made, was never carried out. The bank got nothing. They turned all this over to Drake personally under the written contract. Nothing was turned over to the bank. If the verbal agreement was

made between Vermillion and Drake, it was afterwards abandoned and a different agreement was carried out. That contract was made with James Drake, and, if any cause of action accrued upon it, it is against him, and not against the bank. Under the evidence the court should have instructed the jury peremptorily to find for the plaintiff.

Judgment reversed and cause remanded for a new trial.