## McKenna et al. v. Culton.
### (Decided March 12, 1935.)

TUGGLE & TUGGLE and W. W. RAWLINGS for appellants.

J. G. BRUCE for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Isoline Campbell McKenna, William J. McKenna, Richard Orme Campbell, and Davis Crowell Campbell, in 1930, owned about 15,000 acres of land located in Clay and Knox county, Ky. The co-owners executed, acknowledged, and delivered to David Crowell Campbell a power of attorney, authorizing him in their names to deal with the land, including the power to lease it for oil and gas. Negotiations between him and J. M. Culton, beginning in January, 1930, culminated in his leasing Culton the land for oil and gas.

The lease comprises fourteen clauses, the first of which reads:

"That in consideration of one dollar ($1.00) paid by the Lessee to the Lessors, the receipt of which is hereby acknowledged and the terms and conditions hereinafter stated, the lessors do hereby lease unto the lessee all of the oil and gas in and under the premises hereinafter described, with the right to drill for, and remove and market the same."

The second fixed ten years as its term, "and as long thereafter as oil and gas, or either of them, may be produced in paying quantities."

The third describes the land; the fourth binds the lessee to examine the title for himself at his own cost and expense and notify the lessors before July 31, 1931, of any discovered defects in the title, and if the acreage is reduced because of defective title, the rental or royalty accrued or accruing should be reduced proportionately. The fifth requires the lessee to pay county and state taxes assessed against the land for the year 1929 in lieu of rental of forty cents per acre for the first six months of the lease; to assess and pay the same for 1930 for the second six months. The sixth requires the lessee, in addition to paying these taxes and the annual rental thereinafter provided, to deliver to the credit of the lessors one-eighth part of all oil and gas produced and saved from the land during the life of the lease. The seventh binds the lessee "from and after the date hereof" to pay the lessors annually a rental of 40 cents per acre; provided that for each well completed from time to time under the lease, the lessee shall be entitled to a credit therefor of $200 on the rental. Clauses 8 and 9 contain the obligations of the lessee relative to burying pipe lines and furnishing gas to one dwelling. The tenth reads:

"The lessee shall have the right to terminate this lease in full at any time by notifying the lessors in writing, of the date of termination, and by the payment of all sums due hereunder to the lessor, and the recording at his expense of a deed of surrender. Be it further agreed that the lessee shall have the right at any time to terminate or surrender any portion of the boundaries hereby leased provided the royalties received from this lease annually amount to the minimum sum of Four Thousand Dollars ($4,000.00) per annum, and it is distinctly understood and agreed that anything in this agreement to the contrary notwithstanding the minimum rents and royalties received hereunder by lessors shall not be less than Four Thousand Dollars ($4,000.00), which minimum sum shall be at all times paid regardless of the acreage taken or received."

The eleventh contains the stipulation that the lessors do not warrant the title to the land, but the lessee shall examine the title and may take only that portion of it with the title which he was satisfied. The twelfth provides against a failure to pay the royalties and stipulated the condition of a forfeiture. The thirteenth obligates the heirs and assigns of the parties to the lease. The fourteenth provides that all payments under the lease shall be made at Knoxville, Tenn.

At the time the lease was prepared and signed, Culton and his counsel, and David Crowell Campbell and counsel, were present and participated in agreeing on its conditions, provisions, and terms, and engaged in its preparation and completion. After it was delivered to, and accepted by, Culton, on July 19, 1930, he executed and delivered an option to Crichton of West Virginia, contracting for a sale of the lease at the price of $8,162 cash at any time within thirty days on delivery of the lease properly assigned, at the First National Bank of Manchester, Ky. On that date, in the presence of Culton, Crichton signed and delivered him a letter, wherein it is stated the option had been accepted by Crichton, conditioned that "Culton did not advise the writer prior to the expiration of thirty days from its date and that certain other leases were in full force and effect after July 24th, 1930; provided Culton had not sold them prior to that date." Crichton's option

was not exercised. Thereafter, Culton began to write David Crowell Campbell insisting that he (Campbell) at the time of the execution and delivery of the lease had agreed with him to eliminate clause 10 at any time Culton so demanded. He wrote:

> "You know I told you no company would take it with that clause in it. * * * You know we discussed the merits of the contract and it was agreed between us that if there was anything in this contract that an operator declined to work under that we would rectify it. I will let you know after the 19th whether either of these parties will accept it with this clause or not."

Later, Culton claims he had a proposal from Combs to purchase the lease. Combs says:

> "It was a copy of the original lease which Culton had, somewhat modified and interlined, showing the regular terms, a form of oil and gas lease."

Combs submitted the original lease to West Virginia parties, and they would not deal because "it contained the clause of $4,000.00 minimum royalty." The proposal submitted by Combs to Culton eliminated the tenth clause. Combs claims the parties whom he represented were willing to purchase it with clause 10 deleted.

Prior to April, 1931, Culton endeavored to sell the lease to Levicks and Fitch, Lexington, Ky., who were associated in the business of dealing in leases. Levicks, for himself and Fitch conducted the negotiations between them and Culton. Levicks, Fitch, and Culton agreed to endeavor to induce Campbell to eliminate clause 10. To accomplish this they made an appointment to meet the latter at Knoxville, Tenn., which Fitch and Levicks did in the presence of Judge Rawlings and Campbell's attorney. Fitch explained to Campbell the objection to the lease. Thereupon, an agreement was made between them to prepare a new lease leasing the land to Culton, which was done and signed by Campbell and delivered to Levicks. At that time Culton had brought this action. However, he agreed with Levicks that if he could obtain a satisfactory lease from Campbell and agree on the remuneration paid to Fitch, he (Culton) was willing to dismiss the suit.

Culton's explanation of the obtention of the second lease is that after it was executed, he did not accept it. This action was brought by Culton to recover of the lessors damages for breach of the alleged parol contract to take out of the lease clause 10. In his petition, Culton nowhere charges that clause 10 was inserted either by fraud of Campbell or a mutual mistake of the parties. The lessors filed a general demurrer to the petition. It was overruled, to which they reserved an exception. The petition was traversed by answer, containing an affirmative plea relying upon the execution and delivery of the second lease. The answer was controverted of record. On a trial to a jury a judgment was entered on its verdict for $1,500 in favor of Culton.

In addition to his failure to allege that clause 10 was inserted in the lease either by fraud of Campbell or mutual mistake of the parties, Culton testified that he and Campbell agreed at the time it was executed "that if there was anything in the lease that an operator declined to accept, they would rectify it." And that no other agreement in relation to it, at any other time or place, was ever discussed or agreed upon by him and Campbell. Campbell and his counsel who helped prepare the lease testified no such agreement was discussed or assented to. Culton did not introduce his counsel who helped prepare the lease, and who it is admitted was present at the time Culton testified Campbell made with him the parol agreement to eliminate clause 10, if it rendered the lease unsaleable.

Culton in his brief argues:

"We agree with the defendants that the terms of a written contract may not be modified or altered by parol, but this is not this case. The tenth clause of this contract was relative only to the consideration for it. That clause did not affect the provisions of the contract save as to the consideration for it, and since the consideration need not be expressed in the writing, what it is may always be shown by parol. Or, if one consideration is stated and that is afterward modified by parol the modification may be shown by parol, and the remaining consideration so shown;" "even though the revelation contradict the writing." "A written oil and gas lease, to be extended from year to year as long as production continues, upon a payment of speci-

fied royalty, may subsequently be so modified by parol as to discharge the lessee from liability as to such royalty.''

The principles stated by him are not debatable, but the vital, determinate question is: Are they applicable to the lease involved and the developed facts? The first clause of the lease expressly stipulates the consideration therefor, which is not attacked by Culton either by pleading or proof.

We do not concur in Culton's theory that clause 10 relates ''only to the consideration.'' It is simply a provision of the lease relative to the payment in the future of a royalty and rental essentially vital to the continuation after twelve months from the date of the lease, and governs thereafter the obligations and rights of the lessee and lessors as to the rental, to be paid by the one and accepted by the other. It is only a contractual provision concerning future rights of both the lessors and lessee, and defining a liability of the lessee as therein set forth. It is true we have often ruled the actual consideration of a contract may be shown in every case by extraneous evidence even though it may vary the terms of the contract. Piney Oil & Gas Co. v. Allen, 235 Ky. 767, 32 S. W. (2d) 325; Apple v. McCullough, 239 Ky. 74, 38 S. W. (2d) 955; Bullock v. Young, 252 Ky. 640, 67 S. W. (2d) 941; Price's Adm'r v. Price's Adm'x, 111 Ky. 771, 64 S. W. 746, 66 S. W. 529, 23 Ky. Law Rep. 1086, 1911; Stacy v. Feltner, 142 Ky. 754, 135 S. W. 276; Penn Furn. Co. v. Ratliff, 194 Ky. 162, 238 S. W. 393; Huff v. Fuller, 197 Ky. 119, 246 S. W. 149; Steele v. Hinkle, 205 Ky. 408, 265 S. W. 931; Jones v. Riddell, 224 Ky. 245, 5 S. W. (2d) 1077.

However, the above rule is perfectly consistent with the co-ordinate one that conversations constituting agreements prior to, or at, the time the parties reduce their contract to writing and respectively sign and deliver it, merge into the written instrument. Loveland v. Hays, 208 Ky. 155, 270 S. W. 722; Kentucky Title Co. v. Hail, 219 Ky. 256, 292 S. W. 817; Hoffman v. Wilson, 208 Ky. 195, 270 S. W. 788; E. R. Spotswood & Son v. Lafayette-Phoenix Garage, 207 Ky. 477, 269 S. W. 514. And it is conclusively presumed, in the absence of appropriate allegations of fraud or mutual mistake, sustained by clear and convincing evidence,

that the prior or contemporaneous agreements not incorporated in the written instrument were abandoned (Sheeran v. Irvin, 230 Ky. 307, 19 S. W. [2d] 976), and it supersedes all previous oral negotiations. Paducah Hosiery Mills v. Proctor & Schwartz, 210 Ky. 806, 276 S. W. 803; W. H. Simmons & Co. v. Price's Adm'r, 238 Ky. 332, 38 S. W. (2d) 6.

As early as Logan Turnpike Road Co. v. Pettit, 2 B. Mon. 428, we ruled that in an action on a covenant, it is not competent for a party to it, without an allegation of fraud or mutual mistake, to prove by parol "other terms and conditions than those expressed or necessarily implied." To the same effect, see Lincoln v. Burbank, 218 Ky. 89, 290 S. W. 1081; Kreitz v. Gallenstein, 170 Ky. 16, 185 S. W. 132.

Culton and Campbell for himself and co-owners, with the aid and in the presence of their counsel, deliberately reduced to writing their agreements as evidenced by the lease in such terms as to make it a completed instrument. It is conclusively presumed their whole agreement, the extent and manner of the undertakings of the parties, were included in it. In the circumstances, parol testimony of colloquium, conversation, or declarations of Culton and Campbell, occurring during the negotiations or at the time the writing was completed, is incompetent because it tends to substitute a different provision for clause 10 or eliminate it entirely. Fairbanks-Morse & Co. v. Manning & Combs, 164 Ky. 478, 175 S. W. 1000; Corbin v. Milward, 158 Ky. 308, 164 S. W. 974; Farmers' & Traders' Bank of Campton v. Smith, 224 Ky. 761, 7 S. W. (2d) 200; Turner Elkhorn Coal Co. v. Smith, 218 Ky. 503, 291 S. W. 715; Goldstein v. McDonald, 223 Ky. 161, 3 S. W. (2d) 200; Boone, Foreman & Lackey v. Halteman & Cave Ins. Agency, 226 Ky. 839, 11 S. W. (2d) 973; Sanders v. Wender, 205 Ky. 422, 265 S. W. 939; Citizens' Trust & Guaranty Co. v. Farmers' Bank of Estill County, 166 Ky. 234, 179 S. W. 29; Brown v. Ins. Co., 241 Ky. 514, 44 S. W. (2d) 514; Geary-Gay Motor Co. v. Chasteen, 248 Ky. 283, 58 S. W. (2d) 393; Our Home Life Ins. Co. v. Butch, 242 Ky. 766, 47 S. W. (2d) 714; Glenn v. Hollingsworth, 206 Ky. 392, 267 S. W. 216.

In such case the best test is whether the parties to the contract intended to integrate all or only a part

340

of the transaction in the writing, and whether the written contract deals with that part of the transaction asserted by parol evidence to be included or deleted, as a contractual provision of the writing. Bullock v. Young, supra. No rule precludes parties, entering into a written instrument from simultaneously, for an adequate consideration, entering into a parol contract concerning a different or of the same subject-matter, merely coincident in time, but not intended to be covered by the writing. U. S. Bond & Mortgage Corp. v. Berry, 249 Ky. 610, 61 S. W. (2d) 293.

Without a reformation of the lease, Culton was without right to maintain an action on the parol agreement asserted in his testimony. The lease is absolutely against him. No reformation was sought by proper averments and the prayer does not warrant such. Glenn v. Hollingsworth, supra.

Measuring the allegations of his petition and the evidence sustaining the same by the principles reiterated, it is our conclusion the court erroneously overruled the demurrer to the petition and also improperly failed to direct a verdict for the lessors.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.