## Pickrell & Craig Company, et al. v. Bollinger-Babbage Company.

## Same v. Frank Zinsmeister Company.

(Decided June 17, 1924.)

### Appeals from Jefferson Circuit Court (Common Pleas, Second Division).

1. Evidence—Contract Regarding Payment of Money in Consideration of Canceling of Contract to Purchase Could Not be Contradicted by Parol.—A writing, in unambiguous terms, stating that signers agreed to pay certain sum in consideration of canceling of contract to purchase sugar, could not be varied by parol to show that a refund was to be made, if seller could obtain cancellation of its contract to purchase from another.

2. Evidence—Where Part of Contract Reduced to Writing, Residue May be Proved by Parol in Cases Stated.—Where agreement between parties is one and entire, and only part of it is reduced to writing, residue may be proved by parol evidence, if writing only purports to express part of contract or is expressed in such short and incomplete terms as to render parol evidence necessary to explain what is per se unintelligible.

3. Contracts—Party to Contract Not Permitted to Say He Did Not Read it.—A party to a contract is not permitted to say that he did not read it when he signed it, or did not know what it contained, unless signature was obtained by fraud, actual or constructive.

4. Evidence—All Parol Negotiations Merged in Writing.—All parol negotiations between parties were merged in writing, executed, delivered, and accepted at time as evidnce of contract between them.

5. Reformation of Instruments—Instrument Not Reformed on Faith of Contemporaneous Oral Promise Not Kept.—Where there is no fraud or mistake in preparation of instrument, and parties signing understood its language and purport, it cannot be reformed on faith of contemporaneous oral promise which was not kept.

6. Trial—If there is Any Evidence, Question for Jury.—If there is any evidence, question is for jury.

7. Sales—Contract for Sale Held to Call for Specific Sugar.—A sale of sugar, "in accordance with terms and conditions of contract with M. Co.," held a sale of particular sugar bought from M. Co.

8. Fraud—Knowledge of Falsity of Representation Essential.—In a common law action for deceit, a false representation may not be recovered for unless it is made with knowledge of its falsity, actual or constructive.

9. Equity—Equity May Grant Relief for Fraud by Rescission, where Court of Law Powerless.—Equity may grant relief for false representation and rescind contract on equitable terms, where court

of law is powerless to act, in that person making false representation believed it to be true.

10. Evidence—Conversation Over Phone and Conversation Leading Up to it Held Admissible.—Where contract of sale was result of telephone communications by P. and B. in office of seller, what was said there over the phone by B. in the presence of P. as to sugar being ready for delivery was properly admitted in evidence, and previous conversation between B. and P. was competent as part of transaction and to make intelligible what was said over the phone; fraud in making such statement over phone being in issue.

BRUCE, BULLITT & GORDON and TRABUE, DOOLAN, HELM & HELM for appellants.

SELLIGMAN & SELLIGMAN for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

These two appeals involving practically the same questions will be disposed of in one opinion.

In the spring of 1920, M. G. Gelpi & Co., sugar dealers in New Orleans, bought from Constantine, David Company in New York a large quantity of Java granulated sugar, quality guaranteed by seller to be equal to American standard cane granulated at 24 cents per pound. On May 6, 1920, Gelpi & Co., by written contract, sold to Pickerell & Craig Co., of Louisville, 300,000 pounds of Java granulated sugar with the same guaranty of quality, at 24½ cents a pound. By this contract the sugar was to be shipped from New Orleans in July or August, 1920, A bank guaranty of payment for the sugar in the sum of $73,500.00 accompanied the contract. It was provided in the contract that delay in time of shipment or delivery caused by strikes, fire, flood, drought, accidents, war, insurrection, perils of the sea or any other unavoidable causes should not constitute cause for rejection of the goods by the buyer. On the same day that this contract was made by Pickerell & Craig Co. it sold by a like contract to Bollinger-Babbage Co., in Louisville, 120,000 pounds of this sugar at 25 cents a pound, the contract containing the same guaranty of quality and the same provision as to delay in delivery. The contract also contained these words:

"The above described goods are sold in accordance with terms and conditions of contract with M.

G. Gelpi & Company, New Orleans, La., and in the event that parties from whom we have purchased these goods fail to deliver in full, we have the privilege of prorating delivery to buyers on identically the same basis as delivery is made to us.''

A copy of the contract between the Gelpi Company and Pickerell & Craig Company was attached to the contract. By a like contract on same day, the Pickerell & Craig Company sold, at the same price, to Frank Zinsmeister & Company, of Jeffersonville, 60,000 pounds of the sugar and to the Ohio Valley Grocery Company 120,000 pounds, the remainder of the sugar. Nothing more was done until July 24th, when Pickerell & Craig Company wrote Gelpi & Company as follows:

''Gentlemen:

''Please advise us concerning shipment of the Java granulated booked with you. We want to have our representative in New Orleans examine these sugars on arrival. Kindly, therefore, *wire us just as soon as shipment is ready* so that we can do this.''

On July 26th Gelpi & Company answered as follows:

''We are in receipt of your letter of the 24th, contents of which have been carefully noted. We regret that we have no sample of the Java sugar, but as soon as we get it you may rest assured that we will lose no time in sending it to you.''

Pickerell & Craig Company then wrote to Lamborn & Company, their correspondents at New Orleans, telling them of the situation and making an arrangement with them to inspect the sugar when it arrived. At that time the price of sugar had broken and it was apparent that there would be a loss on the sugar. Nothing more was done until August 24th, when Gelpi & Company wired Pickerell & Craig Company as follows:

''Referring to your contract purchase one hundred and fifty tons Java white sugar, please advise us to whom we shall deliver order.''

Pickerell & Craig Company wired Gelpi & Company as follows:

''When cars loaded notify Lambron & Company, your city, who will inspect, and if sugar grades as per specifications in contract they will authorize pay-

ment on surrender of railroad bills of lading to bank holding our letter credit to you.  Be sure to see that these cars are loaded 300 200-pound bags to the car and that actual shipment is made during August.''

The next day Gelpi & Company wired as follows:

''Your telegram received.  Your shipping instructions are fully noted.  We will arrange accordingly after inspection as instructed.  If interested we have possible chance reselling all Java to local refineries.  Are you interested in selling?''

To this wire Pickerell & Craig Company on the same day answered as follows:

''Answering wire.  Submit to us very best offer you can obtain for the Java sugars at New Orleans and we will endeavor to interest parties to whom we resold your contract.  Wire quick.''

To this Gelpi & Company wired as follows:

''Replying to your wire for immediate wire acceptance today, we will buy your contract for one hundred and fifty tons on basis local price here standard granulated equal 18½c net cash provided you wire us funds before banking hours today to Citizens' Bank & Trust Company, New Orleans, or approximately 6c per pound on total amount to close contract.  Full difference nineteen thousand eight hundred dollars.  Must have quick reply if you accept or not.''

On the 27th Pickerell & Craig Company wired Gelpi & Company:

''Replying to your wire date.  We are interested in making cash settlement on our contract rather than accept delivery of sugar, provided sugar on hand grades up to contract specifications.  Wire whether you have submitted samples to Lamborn. If not, do so at once.  As soon as quality of sugar approved, submit us the very best possible cash settlement you will make.''

On the next day they received from Gelpi & Company the following wire:

''Telegram received.  Our proposition based on cancellation of contract.  Sugar not sampled yet, but

can probably make trade basis as per our sale to you. Make us your best offer and will try to put through if possible."

After receiving this wire Mr. O. W. Pickerell went to the office of the Bollinger-Babbage Company and there, after some conference between them, he dictated to their stenographer the following letter.

"Pickerell & Craig Company., Inc., Louisville, Ky.

"Gentlemen:

"In consideration of your cancelling our contract with you for one hundred and twenty thousand pounds (120,000) Java sugar, we agree to pay you the sum of seventy-eight hundred dollars ($7,-800.00) and hand you herewith our certified check for this amount. It is understood, however, that in the event you do not obtain cancellation of YOUR CONTRACT with the parties from whom you purchased these sugars, you are to return to us the seventy-eight hundred dollars paid you today, in which event YOUR CONTRACT *with us* is still in force, and we agree to accept. The delay of shipment of sugar under OUR CONTRACT *with you* caused by your efforts to obtain a cancellation of YOUR CONTRACT *with M. Gelpi & Company,* New Orleans, will not be held by us as cause for rejection of the sugar when shipped. —Yours very truly, Bollinger-Babbage Co., Inc., Alex. Bollinger, President.

This was written out in that office and then signed and accepted by him for his company. At the time this paper was delivered to him they delivered to him a certified check for $7,800.00. On the same day he made a like arrangement under a like written contract with Zinsmeister & Company and they delivered to him their certified check for $3,900.00. He also made a similar arrangement with the Ohio Valley Grocery Company. This was on Saturday. On the following Monday he went to New Orleans; he found the sugar had not arrived, and finally made an arrangement with Gelpi & Company by which the contract between Gelpi & Company and the Pickerell Craig Company was cancelled on the payment to Gelpi & Company of $1,000.00. Afterwards these actions were brought by Bollinger-Babbage Company and Frank Zinsmeister & Company to recover the amounts they had paid, on the ground that these payments were

obtained by fraud and that it was agreed at the time that if he could settle with Gelpi & Company for a smaller sum than indicated in the telegrams the Pickerell & Craig Company would refund to them the difference. Answers were filed denying the allegations of the petition and on final hearing there was a judgment in each case in favor of the plaintiffs. The defendants appeal.

On the trial much evidence was introduced for the plaintiffs showing that Mr. Pickerell said they would get the plaintiffs out for as little as he could and would pay the balance of the money he received back to them after he had settled with Gelpi & Company. The court in substance instructed the jury that if they believed this evidence to be true they should find for the plaintiffs. The jury should not have been so instructed and the evidence should have been excluded. There was no plea or proof of fraud or mistake in the written contract; there was no evidence of fraud or mistake in it. The writing was in typewriter and was carefully read before it was signed: there was some discussion of its terms before it was signed and some objection made to some of its provisions, but finally it was signed as it was written, with a full knowledge of its terms. The parol evidence was introduced to show an entirely different contract from that set out in the writing, and plainly contradicted the writing. The writing in unambiguous terms states that the signers agree to pay Pickerell & Craig Company the sum of $7,800.00 in consideration of the cancelling of their contract with them for the sugar and hand them therewith their certified check for this amount. The check was delivered with the contract and, as shown by the contract, was paid to Pickerell & Craig Company for the cancellation of the contract with the Bollinger-Babbage Company.

The rule is that where the agreement between the parties is one and entire and only a part of it is reduced to writing, the residue may be proved by parol evidence. The circuit court seems to have been of the opinion that this rule prevailed here, but the rule has a very restricted application.

> "It is restricted in its application to cases in which the writing only purports to express part of the contract, or is expressed in such short and incomplete terms as to render parol evidence necessary to explain what is *per se* unintelligible, and the pro-

posed evidence is not inconsistent with the terms of the writing." Castleman-Blakemore Co. v. Pickerell & Craig Company, 163 Ky. 750.

To the same effect see White Sewing Machine Company v. Smith, 188 Ky. 407. The writing here is perfectly intelligible on its face. The evidence admitted is wholly inconsistent with the terms of the writing.

No rule is better settled than that a party to a contract is not permitted to say that he did not read it when he signed it or did not know what it contained, unless the signature is obtained by fraud, actual or constructive.

All the parol negotiations between the parties were merged in the writing, executed, delivered and accepted at the time as the evidence of the contract between them. Where there is no fraud or mistake in the preparation of an instrument, and the parties signing understood its language and purport, it cannot be reformed on the faith of a contemporaneous oral promise which was not kept. Pickerell & Craig Company v. Castleman-Blakemore Co., 174 Ky. 1. To permit such evidence would be to entirely destroy the value of written contracts. The parties here were business men and perfectly understood the terms of the written instrument when it was signed. All the evidence, therefore, introduced to show a different contract from that expressed in the writing or to vary the contract in any way should have been excluded. It does not follow that a peremptory instruction should have been given for the defendants. There was sufficient evidence that the contract was obtained by fraud, as alleged in the petition, to take the case to the jury. Mr. Pickerell states that he exhibited the telegrams he had received and only stated the facts they showed. On the other hand, there is proof tending to show that he made statements of facts not positively shown by the telegrams. The rule in Kentucky is that if there is any evidence the question is for the jury. The case should have been submitted to the jury on the question of fraud, but on no other question.

The contract that Gelpi & Company made with Pickerell & Craig was simply a contract to sell them so much sugar of a certain quality; it was not confined to the sugar which they had bought from their New York correspondent, and they had a right to fill their contract with any sugar of this quality that was available in the market at New Orleans before the expiration of the time

of delivery fixed in their contract with Pickerell & Craig Company.

On the other hand, the contract between Pickerell & Craig Company and the appellees was for the sugar bought by the Pickerell & Craig Company from M. Gelpi & Company under their contract with that company, a copy of which contract was attached to the appellees' contract. This is the fair meaning of the clause of the contract stating that the sugar is sold in accordance with the terms and conditions of the contract with the Gelpi Company.

Mr. Bollinger testifies: "Mr. Pickerell came in there and says, 'Mighty sorry to tell you but the Gelpi sugar is down in New Orleans ready for delivery; we have to be quick for I am afraid the sugar will be on the road now, the sugar is there.'" He also says that upon giving Mr. Pickerell the check he said to him, "Now the understanding is this, the sugar is in New Orleans, inspected and ready for shipment and Gelpi has it ready for shipment." Similar testimony is given by other witnesses. The fact is the sugar had not reached New Orleans and the Gelpi contract was cancelled because the sugar did not come. The fact is that sugar in Louisville had then so far declined in price that if this sugar had been delivered there would have been a loss of about ten cents a pound on it. Appellees could, therefore, well afford to pay 6½c a pound to get out if there was no other way to avoid the contract. The proof for them tends strongly to show that they were induced to make the contract and give the check by the statements of Mr. Pickerell to them that the sugar was there and this was the only way out of the loss. Mr. Pickerell, on the other hand, testifies that he only showed them the telegrams and that these telegrams warranted him in inferring that the sugar was ready for delivery. It may also be inferred from the testimony that they knew he had not been to New Orleans and that all he knew was derived from the telegrams.

It is insisted that appellees were induced by appellants' representations to pay him the money and that these representations being untrue appellees should recover the money so obtained.

This is a common law action for deceit. A false representation may not be recovered for in such an action unless it is made with knowledge of its falsity. Ball v. Lively, 4 Dana 369; Campbell v. Hillman, 15 B. Monroe 508; Warren v. Barker, 2 Duvall 155. The representa-

tion must have been made with actual or constructive knowledge of its falsity. Prewitt v. Trimble, 92 Ky. 176; Southern Express Co. v. Fox, etc., 131 Ky. 257. In 12 R. C. L., page 330, the rule on the subject is thus stated:

"To prevent a false statement from being fraudulent there must be an honest belief in its truth, and, as a general rule, the existence of such belief is a good defense to an action for deceit, at least where the representations are made for an honest purpose, and where the belief is based on adequate information and where there is no duty on the part of the person sought to be charged to know the truth. In such case the representation cannot be said to have been made for the purpose of deceiving or defrauding the other party. This rule is peculiarly applicable to the expression of honest opinion, estimate, or judgment, regardless of the question of its reasonableness."

While there is some conflict in the authorities, the rule in Kentucky in a common law action like this is that the fraudulent intent is the gist of the action and that it cannot be maintained where the representation is honestly made in the belief that it is true and upon reasonable grounds for belief. On the other hand the rule in equity is different. It is thus stated in 12 R. C. L., p. 345:

"False representations which are made with knowledge of their falsity, and with a fraudulent intent, are, or course, ground for relief in equity as well as at law. As a general rule, however, courts of equity will grant relief in such cases, by way of rescission or otherwise, even though no fraudulent intent on the part of the person making the representation is shown, and though he made them innocently, as a result of misapprehension or mistake. All that need be shown under such circumstances is that the representations were false and actually misled the person to whom they were made. The reason generally given for the rule is that courts of equity may grant relief on the ground of constructive fraud such as would not authorize relief by way of an action of deceit at law."

There is evidence that appellees were induced to sign these contracts and deliver the checks by the statements of Mr. Pickerell that the sugar was in New Orleans and

ready for delivery and that they would not have paid out this large sum of money if they had not so believed. There is also evidence in the record tending to show that Mr. Pickerell in fact knew no more about the matter than they did and that he was entirely sincere in what he said to them. But, notwithstanding all this, the fact remains that the sugar was not in New Orleans, and it may be true, though Mr. Pickerell was sincere, that this money was paid out by appellees under a mistake of fact induced by his representations. In such a case equity may grant relief that a court of law is powerless to grant. It may rescind the contract upon equitable terms and place the parties, as far as may be, *in statu quo.*

· On the return of the case to the circuit court appellees will be allowed to amend their petition and transfer the action to the equity docket, if they desire to do so. If they do not desire this, it will be tried on the question of fraud and the jury will be instructed as above indicated.

The only material difference between the case ·of Bollinger-Babbage Company and the case of Frank Zinsmeister & Company is that in the check of the latter these words are written, ''For settlement contract M. G. Gelpi & Co.,'' but as their contract with the Pickerell & Craig Company was for 60,000 pounds of the Gelpi sugar and by the terms of the written contract the cancellation of their contract was dependent upon the cancellation of the Gelpi contract, these words are not inconsistent with the written contract.

The contract with Frank Zinsmeister & Company was the result of telephonic communications with them by Mr. Pickerell and Mr. Bollinger at the office of the Bollinger-Babbage Company, and what was said there over the 'phone by Mr. Bollinger in the presence of Mr. Pickerell to the Frank Zinsmeister Company as to the sugar being ready for delivery was properly admitted in evidence, and the previous conversation there between Mr. Bollinger and Mr. Pickerell is also competent as a part of the transaction and to make intelligible what was said over the 'phone.

The court does not determine that on the evidence in the record, the plaintiffs are entitled to relief in equity on the ground that the representations were false and actually misled the plaintiffs. We only determine that relief on this ground can alone be had in equity where the representations were honestly made and upon rea-

sonable grounds, and if the cases go to equity the result will depend on the facts as they appear on final hearing.

Judgment reversed and cause remanded for further proceedings consistent herewith.