## E. R. Spotswood & Son v. Lafayette-Phoenix Garage.

(Decided February 24, 1925.)

### Appeal from Fayette Circuit Court.

1. Contracts—When Party Signing Contract Before Reading it is and is Not Bound Stated.—It is the duty of one who enters into a contract to read it before signing it, and if he signs it before reading it he is bound by its terms, unless his signature was obtained through fraud or misrepresentation, or he was not afforded a reasonable opportunity to read it before signing it.

2. Contracts—Presumed that Prior Oral Conversations and Agreements were Merged in Subsequent Written Agreement, in Absence of Fraud or Mistake.—In the absence of a showing of fraud or mistake, it is conclusively presumed that prior verbal conversations and negotiations are to be treated as having been merged in a subsequent written contract.

3. Sales—Buyer Held to have Waived Warranty of Carrying Capacity of Truck by Signing Written Contract Omitting Such Warranty.—A buyer of a truck held to have waived oral warranty as to the truck's ability to carry an additional five tons on a trailer, by signing the written contract containing certain warranties omitting such warranty.

4. Reformation of Instruments—Seller's Pleadings Held Not to Entitle it to Reformation of Terms of Contract.—A buyer of a truck who sought to enforce an express warranty of suitableness of the truck, but who did not by his pleadings seek a reformation of the

terms of the contract, and an enforcement of it as so reformed, was not entitled to a reformation.

FRANKLIN, TALBOTT & CHAPMAN for appellant.

SILAS MASON and H. M. COLLINS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant, Spotswood & Son, is a corporation, as is appellee, Lafayette-Phœnix Garage, both with headquarters in Lexington. Spotswood & Son was at the time of the making of the contract which is the basis of this litigation engaged in the timber and lumber business in Casey and other counties. One of its mills in that county was about 25 miles from McKinney, the railroad station to which it delivered lumber. The Lafayette-Phœnix Garage was engaged in the automobile business and was the agent for the White truck. Learning that Spotswood & Son desired to buy a truck the garage company sent its agent, Mr. Pride, to see the lumber company for the purpose of selling it a White.

The negotiations led to a sale of a White truck by the garage company to the lumber company, at the price of $5,000.00, plus freight and tax. The full purchase price was paid by Spotswood & Son to the garage company. The contract was made some time in February, and the truck was to be delivered about the 15th of April. About the same time the deal was closed for the truck Spotswood & Son bought from another concern a five-ton trailer which it attached to and used in connection with the truck in hauling logs and lumber. After trying the truck and trailer, Spotswood & Son notified the garage company that it would not perform the work for which it was purchased and asked the garage company to rescind the contract and take the truck back. This it refused to do, and this litigation was commenced in the Fayette circuit court by Spotswood & Son against the garage company for the cancellation of the contract and recovery of the price paid, $5,195.00, together with $35.00 for bed for truck and $15.50 for bed for trailer, $50.50 paid for license for the truck, $37.50 for insurance thereon, and $40.00 for the transportation of the truck from Lexington to Casey county. An alternative plea was

added in case a cancellation could not be had.   Spotswood & Son asked the court to adjudge the garage company to have broken and violated its contract, and liable in damages to the lumber company on an implied warranty of fitness of the truck for the purposes and uses specifically set out in the petition.   Issue being joined a great mass of evidence was taken for both the plaintiff and  the defendant and the cause submitted.   The court being advised dismissed plaintiff's petition and it is now prosecuting this appeal.

It insists that it purchased the White five-ton truck of the appellee garage company for the specific purposes which it made known to the seller, and that the seller with this purpose in mind specifically and expressly warranted the truck to be suited for the purposes for which it was purchased.   Appellant company further says that if there was not an express warranty then there was an implied undertaking that the truck was suitable in every way for the purposes of hauling a certain load, including the loaded trailer, from its mill in Casey county over the public highway in its then condition, to McKinney depot, a distance of about twenty-six miles; that the truck was not of such capacity and suitableness as to carry such load over the road named and for that reason the warranty was broken.   It is the contention of appellant Spotswood & Son that it knew nothing about trucks or trailers and relied wholly upon the statements and representations of the agents of the garage company in the purchase of the truck.   In its brief appellant says:

"Many times in the evidence these facts were shown: Spotswood & Son made known to the seller that they wanted to use the truck and trailer to haul logs and lumber, etc., on their holdings, and they explained to the defendant the truck would be of no value to them unless it would pull a trailer, both loaded, not exceeding five tons each.   They explained that the truck alone would be expensive and a loss to them.   If the truck would pull a trailer they could save money by buying the truck and trailer. The defendant's agent, Mr. Pride, all through his deposition shows that this purpose was made known to him and he undertook to supply the truck for this special purpose.   The plaintiffs made known to defendant's agent, Mr. Pride, where the truck and trailer were to be used and upon what roads, and

suggested to Mr. Pride that he go and look at the roads and see if the truck would pull the trailer over them, but Mr. Pride said it would be wholly unnecessary because he was already familiar with the roads.''

After much conversation during the negotiations for the truck the parties entered into the following written contract of sale:

"Lexington, Ky., 2/14/20

"CONTRACT OF SALE.

PHOENIX GARAGE, INC.

"I, the undersigned, agree to purchase from you the following described automobile, with standard equipment, at the price shown below and with extra equipment, as listed below. There are no understandings, agreements, warranties or representations, either verbal or written, not specified herein, respecting the goods hereby purchased. It is understood and agreed that this order is not transferable.

Make and type of car...White 5-ton Standard Chassis
List price of car .........$5,000
Freight and war tax... 195
Color of body ............... lead
Color of wheels .......... lead
Upholstery ..................................................

Total ....................$5,195

Credit for used ..................... car .....................
Balance due .................................................................. ............
Deposit made ............................................................... $200

Balance due on delivery of car ..................... .................

"Title of car to remain with us until paid for in full with interest at the rate of six per cent per annum on all deferred payments.

"Delivery of car to be made on or about April 15 or as soon thereafter as possible.

"The regular factory guarantee is hereby made a part of this proposal, and is as follows, on opposite side of this contract.

"It is thoroughly understood and agreed that no verbal or other agreement, not clearly specified in this proposal, will be recognized.

Respectfully submitted,

PHOENIX GARAGE, INC.,

By J. T. PRIDE.

"Accepted: I, having acquainted myself with the terms and interpretation of this proposal, do hereby accept same.

"E. R. SPOTSWOOD & SON, Purchaser,

"Address C. W. BRUCE, Sec. and Treas."

And endorsed on the back is the following, viz.:

"FACTORY GUARANTEE: Adopted from the Standard Warranty for Passenger and Commercial Vehicles, approved as to form, by the National Chamber of Commerce, Incorporated.

"We warrant each new motor vehicle manufactured by us, whether passenger or commercial, to be free from defects in material and workmanship, under normal use and service, our obligation under this warranty being limited to making good at our factory any part or parts thereof which shall within ninety (90) days after delivery of such vehicles to the original purchaser, be returned to us with transportation charges prepaid, and which our examination shall disclose to our satisfaction to have been defective; this warranty, being expressly in lieu of all other warranties, expressed or implied, and of all other obligations or liabilities on our part, and we neither assume, nor authorize any other person to assume for us, any other liability in connection with the sale of our vehicles.

"This warranty does not cover any labor charges for replacement or parts, adjustments, repairs or other work done on said car.

"This warranty shall not apply to any vehicle which shall have been repaired or altered outside of our factory in any way so as in our judgment to affect its stability, nor which has been subject to misuse, negligence or accident, nor for any commercial vehicle made by us, which shall have been operated at a speed exceeding the factory rated speed, or loaded beyond the factory rated load capacity.

"We make no warranty, whatever, in respect to tires, rims, ignition apparatus, horns or other signaling devises, start devises, generators, batteries, speedometers or other trade accessories, inasmuch as they are usually warranted separately by their respective manufacturers."

It is appellee's contention that one who can read and has opportunity to read the contract which he signs must stand by the words of his contract, unless he is misled or his signature is obtained by fraud, and this is the generally applied rule.

It is also contended that when a known, described and definite article of machinery is ordered of the manufacturer or dealer, although it is stated by the purchaser to be required for a particular use, and if the known, described and definite article or machinery be actually supplied, there is no implied warranty that it shall answer the particular purpose intended by the buyer. And, further, that when the manufacturer instead of the dealer is the vendor of an article there is no implied warranty of fitness.

And, again, that an express warranty of one of the qualities of an article excludes the implied warranty of other qualities.

The evidence is conflicting. The appellant, Spotswood & Son, introduced quite a lot of evidence tending to show that the garage company expressly warranted the five-ton truck to carry a load of five tons and draw a trailer, carrying another five tons, from the mill of Spotswood & Son, in Casey county, over the highway as it then existed, twenty-five or twenty-six miles, to McKinney station. It is admitted, however, that all these conversations concerning the capacity and suitableness of the truck were had before the making of the written contract copied above.

The men who entered into the written contract, Mr. Pride, representing the garage company, and Mr. Spotswood, representing the lumber company, were men of broad experience in the business world. No confidential relation existed between them. They were dealing at arm's length. The lumber company admits that it signed the written contract, but it says it did so under adverse circumstances and without reading it; that its agent, Mr. Spotswood, who was authorized to purchase the truck, went to the third floor of the garage with the

agent of the garage company to look at a White 3-ton truck on exhibition, and that while there discussing the merits of the White truck as well as other trucks with the agent of the garage company, he consented and agreed to purchase the White 5-ton truck at the price of $5,000.00, plus freight and taxes, and that thereafter the agent of the garage company prepared the written contract of sale to which we have referred, and handed it to the agent of the lumber company, who, after looking at it, held it in his hand for some time while he discussed the matter of purchasing the truck with the agent of the garage company, and then signed it, agreeing to send a check for $200.00, the required deposit, by mail to the agent of the garage company, and this agreement was carried out either on the next day or the day following. The agent of the lumber company says, however, he did not read the contract before he signed it because the third floor of the garage, where he was negotiating for the truck, was poorly lighted and he could not see well enough to read the contract. This is disputed by the agent of the garage company and others, who say that the third floor of the garage was the top floor and that there were windows all the way around it and that it had in the roof several large skylights.

It is also shown in evidence that at the time the contract was signed the parties were standing under one of the large skylights and that the place was fully lighted. The agent for the lumber company says that, at the time the contract was written and signed, a copy of it was delivered to him which he then put in his pocket and carried away with him. No money was paid at that time. The deposit of $200.00 was not sent until the next day and the balance of the purchase price was not paid for some weeks thereafter. In the meantime the lumber company had in its possession a copy of the contract which it now says does not express the agreement of the parties. It made no complaint whatever that the writing did not express the agreement until long after the truck had been delivered.

The rule is fully established and expressed in many opinions delivered by this court that it is the duty of one who enters into a contract to read it before signing it, and if he signs it before reading it he is nevertheless bound by its terms, unless his signature was obtained through fraud or misrepresentation, or he was not afforded a reasonable opportunity to read it before signing

it. J. I. Case Threshing Machine Co. v. Mattingly, 142 Ky. 583; United Talking Machine Co. v. Metcalf, 164 Ky. 258; United Talking Machine Co. v. Metcalfe, 174 Ky. 132; Union Mutual Life Ins. Co. v. Mowry, 96 U. S. 544; 24 L. Ed. 674.

It is likewise the law equally as well established that in the absence of a showing of fraud or mistake the presumption is conclusively indulged that prior verbal conversations and negotiations are to be treated as having been merged in a subsequently written contract. Ewing v. Bond, 185 Ky. 781; Toler v. Wheeler-Holden Co., 144 Ky. 829. In the latter case it was said: "Prior oral conversations and agreements will be presumed, in the absence of a showing of fraud or mistake, to be merged in a subsequently executed written agreement."

If it be admitted, as contended by appellant, Spotswood & Son, that appellee garage, during the negotiations, agreed to warrant the truck to carry five tons while drawing a trailer carrying an equal load over the particular road in question, yet that agreement and warranty was waived by the parties when they solemnly entered into the written contract of sale in which was set forth certain warranties but from which was omitted all mention of warranty of fitness of the truck for the purposes and work for which appellant company now insists it purchased the truck, for it must be presumed, in the absence of a showing of fraud or mutual mistake that all of the former conversations and agreements of the contracting parties were merged in the writing which concluded their negotiations. No contract was made until the writing was signed. It is, therefore, presumed to contain all the terms of the contract.

Appellant has not sought a reformation of the writing and an enforcement of it when reformed. This is an action to enforce an express warranty of suitableness of the truck for the performance of the work which appellant lumber company described to the garage company as that which it had to do and which it desired to purchase the truck to perform. Without such pleading the contract cannot be reformed.

For these reasons we concur in the judgment of the learned chancellor, dismissing appellant, Spotswood & Sons', petition. Judgment affirmed.