## Louis P. Hyman & Company v. U .S. Cast Iron Pipe and Foundry Company.

(Decided June 27, 1928.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1.  Contracts.—One cannot be excused from the performance of the provisions of a written contract because he did not read it, if he was able to read and had an opportunity so to do.

2.  Sales.—In action by seller for breach of contract for sale of boiler "cuttings," defense that resident manager of buyer misread letter, and thought letter said boiler "castings," though the word "cuttings" was plainly written, held not an allowable defense, especially in view of fact that, although present suit was not instituted until six months after contract was made, no step was taken by buyer to obtain rescission of contract in court of equity.

3.  Appeal and Error.—When only grounds mentioned in motion for new trial were admission of incompetent evidence and error in instructions, Court of Appeals is precluded from reversing judgment on ground that it is not supported by any evidence.

4. Sales.—In seller's action for breach of contract of sale, evidence relating to price paid for goods by seller when it purchased goods was incompetent and inadmissible.

5. Appeal and Error.—Where incompetent evidence was allowed to go to the jury without objection, Court of Appeals cannot reverse judgment because of the admission of such incompetent evidence.

WALTER S. LAPP for appellant.

HUMPHREY, CRAWFORD & MIDDLETON for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellant wrote a letter to the appellee on the 18th day of May, 1920, which, omitting all but the substance, is as follows:

"We have one or two cars new, clean, boiler cuttings suitable for your mix. Can you use it."

This letter was addressed to appellee at Addyston, Ohio, and was sent by appellant from Louisville, Ky. The reply thereto, omitting formalities, was as follows:

"We have your letter of the 18th inst. as follows: 'We have one or two cars new, clean boiler cuttings suitable for your mix. Can you use it.' We can pay you $38.50 per gross ton f. o. b. our works, for the above, providing it will meet with our specifications as follows: 'In one-man cupola size, free from burnt, chilled, and enameled iron, grate bars, brake shoes, and small pipe, and satisfactory to our resident manager at Addyston, Ohio.'"

On May 20th appellant wrote appellee, accepting its offer of the 19th. The letter is as follows:

Referring to our letter May 18th concerning new steel boiler cuttings and your reply of May 19th, making an offer of $38 gross ton, f. o. b. your works, please be advised, as per our phone conversation of this date, that we are accepting same on two carloads or approximately one hundred (100) gross ton. We have one hundred gross tons of this merchandise and will try to get it in two cars. Otherwise we will have to load it in three smaller cars."

The foregoing letters constitute the contract which appellant relies on in its suit to recover damages for its breach. The subsequent facts must be briefly stated, as they are necessary for a proper decision of the question.

On May 21, 1920, the resident manager of appellee at Addyston, W. L. Perkins, sent a telegram to appellant as follows:

"We will positively not accept any boiler clippings your letter twentieth under any consideration."

At the time of the receipt of this telegram the 100 tons of boiler cuttings had been loaded, and, according to some of the evidence, had gone forward, although it appears that the cars did not leave the city of Louisville until some days later. At all events the boiler cuttings were loaded, under the contract contained in the three foregoing letters, at the time of the receipt of the telegram. At least one of the carloads was shipped and acceptance was refused. The material was disposed of later, and it is the contention of appellant that it received only $25 per ton, instead of $38.50, called for by the terms of the contract. It sued for the difference, and also for freight on the shipment.

The appellee interposed a novel defense. He misread the letter of appellant offering the material for sale, so he said. He thought the letter said boiler "castings," when it said very plainly boiler "cuttings." He gave the letter to his stenographer, who, doubtless under his instructions, quoted the letter verbatim in the reply making the offer for the boiler cuttings. He certainly was making an offer for boiler cuttings, whether he knew it or not. After the stenographer had written the letter, he either again misread the copy of appellant's letter contained in it, or else he did not read the letter at all, and one is about as bad as the other. At all events, appellee insists that it ought to be allowed to escape from the provisions of the contract because its resident manager made a mistake in reading the letter. Of course, it adds to its defense the contention that the price mentioned in the offer for the boiler cuttings was so unreasonable as to convey to the appellant information that appellee's manager had misread the letter, else he would not have made any such offer for boiler cuttings. The entire defense was based on this contention, although it was confined to the one defense by compulsion, as the court had stricken out other offered defenses, or at least one other.

The appellee insists in its brief that the defense is good, if it has established that the price offered for the material was so out of proportion to the market price

that by the force of that one fact the appellant should have known that appellee had made a mistake. If such a defense as that should be allowed in a common-law action for damages for the breach of a contract, it would result in a lot of litigation that otherwise never would have arisen. Ordinarily a man must be held responsible for his mistakes, unless it is unconscionable to allow the man with whom he is contracting to profit as the result of such mistake. But ordinary mistakes incident to business transactions do not amount to such gravity as to be allowed as a defense in a suit of this kind.

This court has held over and over that a man cannot be excused from the performance of the provisions of a written contract because he did not read it, if he was able to read and had an opportunity so to do. Morgan v. Mengel Co., 195 Ky. 545, 242 S. W. 860; Pickrell & Craig v. Bollinger-Babbage Co., 204 Ky. 314, 264 S. W. 737; Spotwood & Sons v. Lafayette-Phoenix Garage, 207 Ky. 477, 269 S. W. 514. The authorities so holding are reviewed in the well-considered opinion in the case of Brenard Manufacturing Co. v. Jones, 207, Ky. 566, 269 S. W. 722. The signing of a contract without reading it simply means that the man does not know what is in it; but he cannot be excused because of that fact, if the opinions in the foregoing cases are sound, and we think they are. If he reads a contract, and by reason of a failure to comprehend the meaning of the words, or if the word looks like some other word, and the reader thinks it is some other word, he certainly is no worse off than if he had never read the contract at all. If he is bound when he never read the contract at all, he ought to be bound when he tried to read it, and failed to do so as the result of his own mistake.

A consideration of all the evidence weighs very strongly against the contention of appellee about the misreading of the letter, even if such misreading should constitute an allowable defense. The evidence is not impressive that the price offered was so out of proportion to the market price as to bring home to the appellant knowledge that there was some mistake in the mind of appellee when it submitted its offer. It would hardly be argued that, if one man should write another a letter saying that he had a horse to sell, and the man should receive the letter and answer that he would buy the horse and pay a certain price for it, he might repudiate the contract, when the horse was delivered to him, upon the

ground that he thought the seller said that he had a mule to sell.

But it is argued by counsel for appellant that this court has announced the rule that one party may be excused from the performance of the contract where there is a unilateral mistake accompanied by fraud or inequity. It is true the court has held that a contract may be re-- formed or canceled in a court of equity in rare instances on the ground of the mistake of one of the parties, which is accompanied by fraud or such inequity as is equivalent to fraud. Counsel cite the case of Board of Regents of. Murray State Normal School v. A. E. Cole, 209 Ky. 761, 273 S. W. 508. That was a case where the Board of Regents had prepared plans and specifications for the construction of a dormitory. Cole submitted a bid, which was much lower than the next lowest bid. The Board of Regents, believing that there must be a mistake, inquired of Cole if he had made a mistake in submitting his bid, and he answered that he was standing on his bid. The contract was awarded to him. Soon thereafter he discovered that he had omitted an item of $22,000 for stonework, and he immediately and on the same day communicated his error to the Board of Regents and requested a cancellation of the contract which was refused. He thereupon instituted suit to cancel the contract. Nothing had been done under the contract at the time. This court held that it was a unilateral mistake, without gross negligence on the part of Cole, and that it would be inequitable to compel him to perform the contract, and it was therefore canceled. That was a suit brought to cancel the contract. Such is not the case that appellee has before us. Appellee is seeking no rescission of the contract in a court of equity.

Counsel rely on the case of Bell v. Carroll, 212 Ky. 231, 278 S. W. 541. That also was a suit in a court of equity to cancel a contract. Again, in the case of Fidelity & Casualty Co. of New York v. Waugh, 222 Ky. 198, 300 S. W. 592, the court announced the age old rule that it cannot make a contract for parties which they did not make, but it may set aside a contract which parties in fact made, where there was a palpable mistake, and the minds of the parties in fact did not meet. It is true, as argued by counsel for appellee, that these opinions have binding force; but they do not apply to a case like this. They apply only in suits for rescission or cancellation of contracts in courts of equity.

The defense relied on by appellee was not allowable to it in this case. The contract was made in May, 1920, and this suit was not instituted until November. No step was taken by appellee to obtain a rescission of the contract in a court of equity. The trial court should have instructed the jury to return a verdict in favor of the plaintiff for the difference between the contract price and the market price of the material sold at the time and at the place where it was to be delivered. The appellee is entitled to interpose any defense allowable under the law. The court required it to elect, and it elected to rely on the defense that there was no contract. If on a return of the case it desires to rely on any other defense, it may do so by amendment to its pleadings.

The only grounds mentioned in the motion for a new trial are that incompetent evidence was admitted to the prejudice of appellant and that the court erred in the instructions given. We are therefore precluded from reversing the judgment on the ground that it is not supported by the evidence, and, as the failure of the court to give a peremptory instruction in behalf of appellant is not relied on in the motion and grounds for a new trial, it may be we should not reverse on that ground. The evidence complained about—that is, the evidence relating to the price paid for the material by appellant when it was purchased by it—was incompetent, and should not have been admitted; but we are inclined to agree with the contention of counsel for appellee that the evidence was allowed to go to the jury without objection. Therefore we cannot reverse on that ground.

The first instruction given by the court is erroneous, however, in that it allowed appellee to be excused from the performance of the contract if the resident manager of appellee misread the letter of appellant offering the material for sale coupled with certain other things set out in the instruction. He was not held to any degree of care in reading the letter. The only thing the jury was required to believe was that he misread the letter, and no witness on earth could say that he did not misread it, when he said he did. It is unnecessary to take up time or space in suggesting what instruction would have been proper under the circumstances, since we have held that the defense relied on by appellant was not allowed to it.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.