## Carroll Oil & Gas Company v. Johnson et al.

(Decided May 21, 1929.)

KIRK, KIRK & WELLS for appellant.

O'REAR, FOWLER & WALLACE and WHEELER & WHEELER for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant and the appellees had negotiations looking towards the sale of the first-mentioned and the purchase by the latter of an interest in a certain 30-acre oil and gas lease in Johnson county known as the Laura Skaggs lease. The price was agreed upon, and a check for the agreed price, to wit, $2,500, was drawn by appellant in favor of appellees. When the check was presented to the bank on which it was drawn, the president of the appellant stopped payment because he had learned that appellees were indebted to appellant for certain supplies and equipment furnished in equipping the gas well which had been drilled on the property by appellees. Thereafter there were telephone conversations and probably other communications between the parties in regard to the failure to pay the check, and, according to the testimony of appellees, appellant was satisfied and agreed to pay the check if it should be sent in. Appellant denies this. The check was sent through again and payment again refused. Suit was instituted by appellees to recover from appellant the amount of the check. The appellant defended on the ground that the check had been procured in the first place by fraud through misrepresentations. The fraud consisted, as alleged, in the representation made by appellees that the lease was a "regular"

lease, when as a matter of fact it was a "guardian" lease. By these terms it is meant that the appellant claims that it is understood from representations made that Laura Skaggs, the owner of the land, executed the lease, when as a matter of fact she did not own the land and the lease was executed by the guardian of certain infant heirs along with others owning an interest in the property who were of full age. It is contended by appellant that a "guardian" lease binds the infants no longer than their minority, and that such a lease is less valuable than a "regular" lease. We shall not decide this question, as it becomes immaterial in view of the conclusions we have reached.

When the terms of the sale were agreed upon, appellees made an assignment of the lease in writing, which assignment was acknowledged. The lease with the assignment appearing thereon was presented to the president of appellant by one of the appellees. They had some discussion over one of the provisions of the lease not necessary to mention. Appellant contends that its president did not read the assignment before drawing the check, and that he had not discovered that the assigned lease was a "guardian" lease prior to his first refusal to pay the check when it was presented to the bank on which it was drawn. He had discovered the nature of the lease before the check was sent through the second time, and it was because it was not the kind of lease that he thought he had purchased that induced him to refuse payment of the check the second time.

We do not know who is correct in the testimony of this particular point, but we can seize onto the admitted fact that the assignment was presented to the president of appellant before the check was drawn. Appellant admits that he had an opportunity to read the assignment before he drew the check. Whether he read it or not, he had a full opportunity to do so. Appellant cannot now say that it is not bound by the provisions of the assignment because appellant's president failed to read it before he accepted it. It was his duty to read it and understand it. The assignment clearly stated that the lease in the first place had been executed by a guardian for certain infants. The main defense of appellant, therefore, must fail. Louis P. Hyman Co. v. United States Cast Iron Pipe & Foundry Co., 225 Ky. 510, 9 S. W. (2d) 226.

The further defense was interposed that appellees fraudulently misrepresented the quantity of gas produced by the well. The evidence is very conflicting on this point. We do not know whether appellant's witnesses are mistaken, or whether the witnesses for appellees are mistaken about the representations which were made about this matter. One of the appellees testified that the representative of appellant was present when the well was gauged. Appellant's representative denied this and established by other witnesses that he was not present. The president of appellant does not testify that any representations were made to him as to the amount of gas which the well would produce. The testimony of one of the appellees is that he made no representation on the point, while the testimony of appellant's representative is that such representations were made. Taking into consideration all of the circumstances and the testimony of all of the witnesses, we are of the opinion that the evidence was equiponderant on this point, and as the burden was on appellant to show fraud, we must hold that the defense based on fraudulent misrepresentions as to the quantity of gas the well would produce was not sustained.

The appellant filed a counterclaim asking for $536.50 by reason of the supplies and equipment which were furnished to appellees. It appears that it was agreed before the equipment and supplies were furnished that if appellant should purchase the lease the price should be credited by the value of the material so furnished, but if he did not purchase the lease appellees were to pay the market price. The lower court allowed a reduction of $50 from the proven market price of the material, and gave credit on the judgment for $2,500 in favor of appellees by $486.50. We do not know why this reduction was made, and we are inclined to think it was a clerical error on the part of the court. The judgment should be corrected to that extent, and the amount of $536.50 should be allowed on the counterclaim; but this does not require a reversal of the case.

Judgment affirmed.

Judge Willis not sitting.