OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



December 17, 2001

The Honorable Rick Berry
Harrison County Criminal District Attorney
P.O. Box 776
Marshall, Texas 75671

Opinion No. JC-0440

Re: Whether a Texas Natural Resource Conservation Commission rule requiring owners of surface-irrigation on-site sewage facilities to have ongoing maintenance contracts is authorized (RQ-0400-JC)

Dear Mr. Berry:

You ask whether the Texas Natural Resource Conservation Commission ("TNRCC") is authorized to promulgate a rule requiring owners of certain on-site sewage facilities to have ongoing maintenance contracts. You also ask whether this rule violates the Due Process Clause or Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. We conclude that the rule is a valid exercise of TNRCC's statutory authority under chapter 366 of the Health and Safety Code and that the rule does not deny substantive due process or equal protection.

Chapter 366 of the Health and Safety Code regulates the installation and maintenance of "on-site sewage disposal systems," sewage treatment devices or disposal facilities that produce a limited amount of waste each day and that "are used only for disposal of sewage produced on a site on which any part of the system is located." TEX. HEALTH & SAFETY CODE ANN. § 366.002(7) (Vernon 2001) (defining "on-site sewage disposal system"). In the rules you ask about, the TNRCC refers to these systems as "on-site sewage facilities" or "OSSFs," see 30 TEX. ADMIN. CODE § 285.2(45), (46) (2001), and we will use that term in this opinion.

The TNRCC is charged with administering chapter 366, with adopting implementing rules, and with designating local governments as "authorized agents" to assist the TNRCC with enforcing the chapter and rules. See TEX. HEALTH & SAFETY CODE ANN. §§ 366.002(1) (defining "authorized agent"), .012 (TNRCC rule-making authority), .031-.036 (designation of authorized agents) (Vernon 2001). The TNRCC has promulgated rules implementing chapter 366 in chapter 285 of title 30 of the Texas Administrative Code. You ask about section 285.7, which establishes special requirements for OSSFs using surface irrigation as a disposal method. See 30 TEX. ADMIN. CODE § 285.7 (2001). According to the TNRCC, whereas some types of OSSF systems dispose of effluent into the subsurface where there is little likelihood that it will come into contact with humans or

groundwater, surface-irrigation systems dispose of effluent on the surface.[1] Because "there is a much higher risk that humans will contact effluent that is disposed of through surface irrigation," surface-irrigation systems must disinfect effluent and treat it to a higher quality than most subsurface systems. *See* TNRCC Brief, note 1, at 1-2.

Section 285.7 conditions issuance of a final permit for a surface-irrigation system on an "initial maintenance contract [that] must be valid for a minimum of two years," 30 TEX. ADMIN. CODE § 285.7(d) (2001), and also mandates that "[o]ngoing maintenance shall be provided by a maintenance company," *id.* § 285.7(f), requiring the OSSF owner to submit to the permitting authority a copy of a new contract at least thirty days prior to the expiration of the previous contract, *see id.* § 285.7(f)(1). In addition, if either the OSSF owner or the maintenance company decides to terminate the maintenance contract, the rule requires the maintenance company to notify the permitting authority at least thirty days prior to the date service will cease. *See id.* § 285.7(f)(2). Finally, if the maintenance company discontinues business, the OSSF owner is required to contract with another company and provide the permitting authority with a copy of the new contract within thirty days of the termination date. *See id.* § 285.7(f)(3).

We note that the TNRCC adopted amendments to chapter 285 on June 8, 2001, which became effective shortly before you submitted your query. *See* 26 Tex. Reg. 4115 (2001) (to be codified at 30 TEX. ADMIN. CODE ch. 285 (2002)). The amendments revise section 285.7, but requirements for ongoing maintenance contracts for surface-irrigation systems remain substantially the same. *Compare* 30 TEX. ADMIN. CODE §§ 285.7, 285.91(12) (2001), *with* 26 Tex. Reg. 4115, 4134, 4181-83 (to be codified at 30 TEX. ADMIN. CODE §§ 285.7, 285.91(12) (2002) (as adopted June 8, 2001, effective June 13, 2001)); *see also* TNRCC Brief, note 1, at 1 ("On [June 8,] 2001, the TNRCC adopted amendments to the 1997 rules. The requirements for an ongoing maintenance contract remain the same.").

You inform us that approximately 1,200 residents of Harrison County have received notices from the Harrison County Health Department, acting as an authorized agent under chapter 366 of the Health and Safety Code, "threatening them with criminal charges for failure to have on file maintenance contracts . . . as required under the rule stated at" 30 TEX. ADMIN. CODE 285.7 (2001).[2] Your office is charged with the prosecution of criminal offenses in Harrison County. *See* Request Letter, note 2, at 2. You are concerned that the ongoing-maintenance-contract requirement in section 285.7 exceeds TNRCC's statutory authority and that it violates the Due Process Clause and the Equal Protection Clause. We address each of these concerns in turn.

First, we address the TNRCC's authority to adopt a rule requiring owners of surface-

---

[1]*See* Brief from Kathy H. Brown, Staff Attorney, Environmental Law Division, Texas Natural Resource Conservation Commission, at 2 (Sept. 5, 2001) (on file with Opinion Committee) [hereinafter TNRCC Brief].

[2]Letter from Honorable Rick Berry, Harrison County Criminal District Attorney, to Susan Gusky, Chair, Opinion Committee, Office of the Attorney General, at 1-2 (July 6, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

irrigation on-site sewage facilities to have ongoing maintenance contracts. In reviewing the rule, we are guided by the maxim that "[a]n agency can adopt only such rules as are authorized by and consistent with its statutory authority." *R.R. Comm'n v. Arco Oil & Gas Co.*, 876 S.W.2d 473, 481 (Tex. App.–Austin 1994, writ denied). The critical factor in determining whether an administrative agency has exceeded its rule-making authority is whether the rule's provisions are in harmony with the general objectives of the statute involved. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 750 (Tex. 1995); *R.R. Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex. 1992). An agency rule may not impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See Arco Oil & Gas*, 876 S.W.2d at 481; Tex. Att'y Gen. Op. No. JC-0020 (1999) (concluding that TNRCC rules requiring certification of persons who engage in site evaluation were invalid because they imposed burdens not provided for by Health and Safety Code chapter 366). Applying this standard, we conclude that the TNRCC rule requiring an owner of a surface-irrigation OSSF to have a maintenance contract in force on an ongoing basis does not exceed the TNRCC's statutory authority.

The purpose of chapter 366 is to "eliminate and prevent health hazards by regulating and properly planning the location, design, construction, installation, operation, and maintenance of on-site sewage disposal systems." TEX. HEALTH & SAFETY CODE ANN. § 366.001(1) (Vernon 2001). The TNRCC and its authorized agents:

> (1) have general authority over the location, design, construction, installation, and proper functioning of on-site sewage disposal systems; and
>
> (2) shall administer this chapter and the rules adopted under this chapter.

*Id.* § 366.011. The TNRCC has express rule-making authority under section 366.012; an authorized agent operates on the basis of a resolution or order approved by the TNRCC, which must incorporate the TNRCC's rules but which may provide for greater protection of health and safety. *See id.* §§ 366.012, .032. A person may not "construct, alter, repair, or extend, or cause to be constructed, altered, repaired, or extended," an OSSF "that does not comply with [chapter 366] and applicable rules." *Id.* § 366.004.

A person who violates chapter 366 or a commission rule under chapter 366 is subject to civil penalties, an action for injunctive relief, or both. *Id.* § 366.092; *see also id.* § 366.001(3) (purpose of chapter 366 includes authorizing "the commission or authorized agent to impose a penalty for a violation of this chapter or a rule adopted under this chapter"). In addition, chapter 7 of the Water Code, which generally authorizes the TNRCC to initiate enforcement actions, establishes criminal penalties for violations of chapter 366 and rules adopted under chapter 366. *See* TEX. WATER CODE ANN. §§ 7.172, .173, .174 (Vernon 2000).

With respect to permits, section 366.051 of the Health and Safety Code provides that a person must hold a permit and an approved plan "to construct, alter, repair, extend, or operate an on-

site sewage disposal system." TEX. HEALTH & SAFETY CODE ANN. § 366.051(a) (Vernon 2001). If the OSSF is located in the jurisdiction of an authorized agent, the authorized agent issues the permit; if the OSSF is located in an area that is not within the jurisdiction of an authorized agent, the TNRCC issues the permit. *See id.* § 366.051(b).

With one exception noted below, section 366.0515 provides that an authorized agent by order or the TNRCC by rule "may condition approval of a permit for an on-site sewage disposal system on the system's owner contracting for the maintenance of the system." *Id.* § 366.0515(b). If a maintenance contract is required, the owner of the OSSF must submit to the permitting authority (either the authorized agent or the TNRCC) "a signed contract for the maintenance" of the system and, in a county with population over 2.8 million, a performance bond from the person contracting to perform the maintenance. *See id.* § 366.0515(b)(1), (2). This section also provides that:

> If the owner of the on-site sewage disposal system enters into a new maintenance contract or revises the original maintenance contract, the owner must submit a copy of the new or revised maintenance contract and a new performance bond to the permitting authority not later than the 30th day after the date on which the original contract terminates or is modified.

*Id.* § 366.0515(d).

Section 366.0515 provides in subsection (a) that neither an authorized agent nor the TNRCC may require a maintenance contract for an OSSF "using aerobic treatment for a single-family residence located in a county with a population of less than 40,000." *Id.* § 366.0515(a). The TNRCC rules include this statutory exception. *See* 30 TEX. ADMIN. CODE § 285.8(b), (c) (2001); 26 Tex. Reg. 4115, 4134 (adopted June 8, 2001) (to be codified at 30 TEX. ADMIN. CODE § 285.7(c)(4) (2002)). As Harrison County's population exceeds 40,000, that exception is not relevant here. *See* I BUREAU OF THE CENSUS, U.S. DEP'T OF COMMERCE, 1990 CENSUS OF POPULATION: General Population Characteristics: Texas 2 (1992) (the population of Harrison County is 57,483) (62,110 according to 2000 census, *available at* http://www.census.gov).

We conclude that the TNRCC rule requiring ongoing maintenance contracts for surface-irrigation systems is expressly authorized by chapter 366, particularly section 366.0515. Section 366.0515 expressly permits the TNRCC "by rule" to "condition approval of a permit for an on-site sewage disposal system on the system's owner contracting for the maintenance of the system." TEX. HEALTH & SAFETY CODE ANN. § 366.0515(b) (Vernon 2001). If the TNRCC promulgates such a requirement, section 366.0515 expressly requires the owner of an OSSF for which a maintenance contract is required to submit a copy of a new or revised maintenance contract to the permitting authority. *See id.* § 366.0515(d). Thus, the regulatory contract requirement does not impose an additional burden not provided by chapter 366.

You contend that section 366.0515 does not require an OSSF owner "to renew an expired contract," suggesting that while the statute requires an owner to submit any new or revised

maintenance contract to the permitting authority, it does not actually require the owner to obtain such a contract. *See* Request Letter, *supra* note 2, at 3. We disagree. Section 366.051 requires a person to hold a permit not only to construct an OSSF, but also to operate one. *See* TEX. HEALTH & SAFETY CODE ANN. § 366.051(a) (Vernon 2001) (person must hold a permit and an approved plan "to construct, alter, repair, extend, or *operate* an on-site sewage disposal system") (emphasis added). Section 366.0515 expressly allows the TNRCC by rule to condition approval of a permit to construct an OSSF not only on the plans to construct it but also on manner in which the owner will operate it. *See id.* § 366.0515(b) (the TNRCC "by rule may condition approval of a permit for an on-site sewage disposal system on the system's owner contracting for the maintenance of the system"). Under chapter 366, the TNRCC's permitting authority extends not just to the construction and initial operation of an OSSF but also to its ongoing operation. *See id.* §§ 366.051, .0515; *see also id.* § 366.011(1) (the TNRCC has "general authority over the location, design, construction, installation, and *proper functioning* of on-site sewage disposal systems") (emphasis added). The TNRCC rule requiring an OSSF owner to have an ongoing maintenance contract and to submit new or revised contracts to the permitting authority is entirely consistent with this statutory scheme.

We note that the TNRCC first adopted section 285.7 to be effective February 5, 1997. *See* 22 Tex. Reg. 1114 (1997). Section 366.0515 of the Health and Safety Code was enacted by the Seventy-fifth Legislature during the 1997 legislative session and did not become effective until September 1, 1997. *See* Act of May 27, 1997, 75th Leg., R.S., ch. 1127, 1997 Tex. Gen. Laws 4278. Although there may have been some question whether the rule exceeded TNRCC's authority at the time it was adopted in early 1997, *see, e.g.,* TEX. GOV'T CODE ANN. § 2001.006 (Vernon 2000) (Administrative Procedure Act provision governing rule-making steps a state agency may take prior to a statute's effective date), we do not reach this issue. Given that the requirement for ongoing maintenance contracts has been readopted in the most recent TNRCC amendments to chapter 285, this would appear to be a moot question. *See* 26 Tex. Reg. 4115, 4134 (2001) (adopted June 8, 2001) (to be codified at 30 TEX. ADMIN. CODE § 285.7 (2002)).

We also note that section 366.0515(d) provides that if an OSSF owner enters into a new or revised maintenance contract, the owner must submit a copy of the new contract to the permitting authority "not later than the 30th day after the date on which the original contract terminates or is modified." TEX. HEALTH & SAFETY CODE ANN. 366.0515(d) (Vernon 2001). By contrast, the TNRCC rule requires OSSF owners to submit new contracts to the permitting authority "at least 30 days prior to expiration of the previous contract." 30 TEX. ADMIN. CODE § 285.7(f)(1) (2001). If the maintenance company discontinues business, however, the owner must provide the permitting authority with a copy of a new contract "within 30 days of the termination date." *Id.* § 285.7(f)(3). The requirements of the new rule are substantially similar. *See* 26 Tex. Reg. 4115, 4134 (adopted June 8, 2001) (to be codified at 30 TEX. ADMIN. CODE § 285.7(c)(2), (3)(D) (2002)). You do not ask about these differences between the statute and the rule and we do not address them, except to note that they do not affect our conclusion that requiring ongoing maintenance contracts for surface-irrigation systems is consistent with the TNRCC's statutory authority.

Next, we address your constitutional concerns. You believe that if chapter 366 authorizes the rule requiring ongoing maintenance contracts, then chapter 366 violates the Due Process Clause

of the Fourteenth Amendment to the United States Constitution because the existence of a maintenance contract does not bear a rational relationship to the statute's goal of protecting public health. *See* Request Letter, *supra* note 2, at 5 (citing *Harper v. Lindsay*, 616 F.2d 849 (5th Cir. 1980) for the proposition that due process requires that state's police power "must bear a rational relation to a legitimate state end"). You contend that "[t]he signing of a contract does not ensure that raw sewage will not be released into the water supply." *Id.* You also believe that if chapter 366 authorizes the rule requiring ongoing maintenance contracts, then chapter 366 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because, you assert, the rule treats single family and cluster OSSFs differently and that there is no reasonable basis for the classification. *See id.* at 5-6.

Courts review statutes regulating land-use that are challenged on substantive due process or equal protection grounds under the "rational-relationship" standard. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 938-39 (Tex. 1998); *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 631-32 (Tex. 1996). To survive these constitutional challenges, the statute need only be "rationally related" to a legitimate state interest. *See Mayhew* 964 S.W.2d at 938-39; *Barshop*, 925 S.W.2d at 631-32. The standard of review is elevated to "strict scrutiny" only if the statute (1) limits a fundamental, constitutionally secured right, or (2) implicates a suspect class. *See Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 559 (Tex. 1985); *R Communications, Inc. v. Sharp*, 839 S.W.2d 947, 951 (Tex. App.–Austin 1992), rev'd on other grounds, 875 S.W.2d 314 (Tex. 1994).

You have not indicated that strict scrutiny would apply here, and we are not aware of any basis for applying the higher standard of review. The purpose of chapter 366 and the ongoing maintenance contract requirement is the protection of public health and safety, a legitimate state interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 366.001 (Vernon 2001) (purpose of chapter 366 is to prevent health hazards by regulating construction and maintenance of OSSFs); 30 TEX ADMIN. CODE § 285.1 (2001) (OSSFs regulated to minimize transmission of disease and contamination of drinking water, surface and groundwater); *City of Austin v. Quick*, 7 S.W.3d 109, 119 (Tex. 1998) (recognizing that protection of water quality is a legitimate government interest); *Barshop*, 925 S.W.2d at 632 (preserving and conserving water and other natural resources is a legitimate state interest); *Trail Enters., Inc. v. City of Houston*, 957 S.W.2d 625, 634-35 (Tex. App.–Houston [14th Dist] 1997, pet. denied) (upholding city ordinance prohibiting drilling in the area of its watershed to protect the city water supply against equal protection and substantive due process challenges because "[m]easures to prevent contamination of Lake Houston caused by drilling for oil and gas in the area of its watershed are rationally related to the legitimate goal of protecting the City's water supply from pollution"). Applying the rational-relationship test, we have no doubt that a court would conclude that requiring ongoing maintenance contracts for surface-irrigation systems is rationally related to protecting public health and safety. *See Heller v. Doe*, 509 U.S. 312, 320 (1993) ("A statute is presumed constitutional and 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it'. . . . [C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because 'it is not made with mathematical nicety.'") (citations omitted); *Lens Express, Inc. v. Ewald*, 907 S.W.2d 64,

69 (Tex. App.–Austin 1995, no writ) ("Under the rational-relationship test, the law 'must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'") (citation omitted).  Finally, we note that there is a dispute between the requestor and the TNRCC regarding whether the rules treat single-family and cluster systems differently with regard to the maintenance-contract requirement.[3]  We believe, however, that the requestor would have great difficulty demonstrating that such a classification, if it exists, has no conceivable rational basis.  *See id.*

---

[3]*See generally* TNRCC Brief, *supra* note 1; Brief from Al Davis, Assistant Criminal District Attorney of Harrison County, to Susan Gusky, Chair, Opinion Committee (Oct. 2, 2001) (on file with Opinion Committee).

## S U M M A R Y

A Texas Natural Resource Conservation Commission rule requiring owners of surface-irrigation on-site sewage facilities to have ongoing maintenance contracts does not exceed the Commission's statutory authority. Neither the rule nor the statutory provisions authorizing it violate federal due process or equal protection guarantees.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee